## AGEE v. STEELE.

1. S, having a judgment against A, verbally agreed with him that he would bid off the land of A, subject to an agreement to be afterwards entered into between them. Shortly afterwards they met, and ascertained the amount due from A to S, including the note here sued upon, and it was then agreed in writing, that A should have two years to pay the debt, by four equal instalments, and that upon the payment of the debt, S would convey the land to A. A failed to pay the instalments, and by consent of A, S sold the land—Held that the verbal agreement was void under the statute of frauds, and the written agreement void for want of consideration. That it was a mere gratuitous promise. which S might have disregarded, and brought suit immediately for the recovery of the debt, and therefore d id not exonerate the surety.

Error to the Circuit Court of Monroe.

Assumpsit on a promissory note for $200 made by one John Peebles and the plaintiff in error.

From a bill of exceptions, it appeared in evidence that Peebles was the principal, and Agee the surety in the note sued on. That in May, 1840, certain real property belonging to Peebles, was about being sold by the sheriff under execution, and a verbal agreement was entered into, between him and Steele, that the latter should bid off the land, subject to an agreement to be thereafter entered into between the parties, which he accordingly did, at $750, and took the sheriff's deed therefor. It was proved that the property at the time of the sale was worth $3000.

Shortly after, Peebles and Steele ascertained the amount the latter owed the former, which, including the price bid for the land, and the note here sued on, amounted to $1566 65, and thereupon, Steele executed to Peebles, the following instrument of writing;

"Whereas, I am by purchase at sheriff's sale, the owner of the lands and tenements upon which are situate the saw mill and improvements now possessed by John Peebles, to wit: &c. (describing the lands;) and the said John Peebles being now indebted to me in the sum of $1566 65, being the amount I bid and

paid for his land, and the amount which he owes me in addition thereto. Now if the said John Peebles, will pay the said sum of $1566 65, with interest thereon as follows, to wit: one fourth part with the interest thereon in six months—one fourth part with the interest thereon in twelve months—one fourth part with the interest thereon in eighteen months—and one fourth part with interest in twenty-four months from this date, then I obligate myself to convey to said Peebles, his heirs, &c. the above described land and premises. But it is distinctly understood, that upon the failure of the said Peebles to pay the first, or any subsequent instalment, then the said Steele may and shall forthwith enter into possession of said land and premises. 13 July, 1840.

STEPHEN STEELE.

Peebles never paid any of the instalments, and some eighteen months afterwards, Steele with the consent of Peebles, who had remained in possession, sold the land for $800.

The defendant's counsel moved the Court to charge, that by the agreement Peebles had the option, either to pay the instalments and take the lands, or to decline doing so, and if he did, that Steele had the full ownership of the lands, and Peebles was exonerated from the payment of the debt, which the Court refused. Further, that if the surety was not privy to, and consenting to the delay given upon the payment of the debt, that he was discharged, which the Court also refused, and the defendant excepted. This is now assigned as error.

PECK & CLARK, for plaintiff in error, did not insist on the first point, but argued that the surety was discharged by the agreement entered into for delay. That although the verbal agreement was not obligatory, yet it constituted a moral obligation, which was a sufficient consideration to sustain the written contract afterwards entered into, and which might be enforced in Chancery. That it was in effect a mortgage. They cited 2 Porter, 414; 2 Metcalfe, 176; 3 Id. 255.

BLOUNT, contra. There is no consideration to support the agreement. It was neither beneficial to Steele, or injurious to Peebles, and was a mere kindness, or gratuity, not binding in law, and did not restrain Steele from suing at any time he pleas-

·ed on this contract. More delay in suing, will not absolve the surety. He cited 6 Ala. 533.

ORMOND, J.—A contract between the creditor and the principal debtor, which prolongs the time of payment of the debt, without the consent of the surety, absolves him from liability for the debt. A contract to produce this result, must be one which is obligatory on, and may be enforced by the parties to it, and the single question is, what is the nature of the contract relied on in this case, for the discharge of the surety.

The verbal agreement about the purchase of the land, was clearly invalid under the statute of frauds, and was so admitted to be in the argument, and the written contract is equally destitute of validity, for want of consideration. It was a mere gratuitous promise, to wait with the debtor for two years, to enable him to pay by instalments, the debt which he owed, and the money which was advanced upon the sale of the land, and created no legal obligation whatever upon Steele, who might have disregarded it, and brought suit immediately for the debt. It did not therefore abridge any right of the surety, who might either have paid the debt himself, or required Steele to bring suit for its recovery.

It is urged that the verbal agreement created a moral obligation, which will support the written contract afterwards made. A moral obligation to do an act, may support an express promise to perform it, as a promise to pay a debt barred by the statute of limitations, or created during infancy. In these and other cases of imperfect moral obligation, which might be supposed, the party is in morals, and conscience, bound to do the act, although by law he cannot be enforced to do it. Nothing of that kind exists here. A mere naked promise, though, it may create an honorary, does not constitute a moral obligation, in the proper legal sense of that term, though in ethicks a man may be said to be morally bound, to perform every promise he voluntarily makes. The common law takes no cognizance of such promises, and their being in writing adds nothing to their validity.

There is not a little of refinement and subtlety, in this doctrine of the discharge of sureties by contracts between the creditor and principal debtor, to which they have not in form assented, but which in reality are for their benefit. A modern English Chan-

cellor has declared, that "it was a refinement of the Court of Chancery, and he would not refine upon it," and although we must enforce the law upon this subject as we find it, we certainly shall not extend its boundaries, or stretch its limits, beyond its present dimensions.

In our opinion the law was correctly expounded by the Circuit Court, and its judgment must be affirmed.