## DRAPER vs. ROMEYN and BADE.

An agreement between a creditor and the principal debtor, for an extension of the time of payment, in order to discharge the surety, as having been made without his consent, must be founded on a consideration; and must be such an agreement as will preclude the creditor from enforcing payment against the principal until the expiration of a specified period.

W. called upon a creditor, in behalf of B. the maker of a note, just before it fell due, to request of him further time to pay it. The creditor expressing his anxiety to close the sale of certain lands, which W. and B. were employed by him as agents to sell, W. urged his *willingness*, though not bound to do so, to forward the sale of the lands, to any emigrants that might arrive during the season, without any additional cost to the creditor. On these assurances and considerations, the creditor promised that the note "might remain *for some days;*" without fixing any specific period for the extension of credit; *Held* that the indorser was not discharged; the promise of W. being merely gratuitous, and importing no legal obligation.

THIS was an appeal by the defendant Romeyn from a judgment rendered at a special term. The complaint was an ordinary one on a promissory note for $300, dated January 30, 1850, charging the defendant Bade as maker, and the defendant Romeyn as indorser. The answer of the defendant Romeyn alleged that he was an accommodation indorser of the note, to the knowledge of the plaintiff. That Bade was, before and after the date of the note, employed by the plaintiff to attempt to sell certain lands in Michigan. That Bade and one John W. Wattson were, before and at the time of the maturity of the note, partners, in New-York city, for the purpose of selling lands, and of booking and forwarding emigrants. That before the maturity of the note, and without the knowledge or assent of Romeyn, the plaintiff made an agreement with Bade that the time of payment of the note should be extended ten days, in consideration of the firm of Bade & Wattson agreeing to use their best endeavors to sell the plaintiff's land, and to forward settlers to them without any additional compensation. That some day after the maturity of the note, an agreement was entered into between the plaintiff and Bade and said Wattson, that Wattson should co-operate with Bade in selling the plaintiff's lands; in consideration of which the time of payment of the note was ex-

Draper *v.* Romeyn.

tended one week. All which agreements were without the knowledge, assent or authority of the defendant Romeyn. The reply controverted separately each allegation in the answer. The cause was tried on the 21st November, by his honor Justice Edwards, at circuit, without a jury. He subsequently delivered his decision in writing, whereby he decided : 1st. That no consideration was proved for the alleged agreement to extend the time of payment of the note. 2d. That the plaintiff, in fact, made no agreement to extend the time of payment of the note, even if the consideration were sufficient. Said justice thereupon ordered judgment against Romeyn for the amount claimed, with interest and costs.

The only testimony on the trial was that contained in the deposition of John W. Wattson, which was read by the defendant. Among other things he testified as follows : " That within the last year he was in partnership with the defendant Bade, in the business of booking and forwarding passengers, emigrants, &c., and we held ourselves ready to do a general agency and commission business, and had made arrangements for conducting such a business quite extensively ; Mr. Bade was a Hollander by birth, but spoke and wrote both German and French with facility, and had much intercourse with foreigners and did much for and with them, especially in buying and selling land. I was connected with him in this business from about the first of February last to the first or middle of June last, in all, something over four months. I knew of the execution of the note sued on ; defendant Romeyn *was an accommodation indorser, to my knowledge;* the plaintiff Draper knew this to be the fact just after the note fell due, by information from me ; and from the tenor of his conversations with me at that time it was evident that he had been apprised of it before. Mr. Draper stated to me, both before and after the note fell due, that he did own several tracts of land in Michigan, and that *he had employed Mr. Bade to sell them for him ;* that Mr. Bade had informed him of his progress, from time to time ; first, that an agent in Holland was employed in selling the lands ; then, that they were sold or contracted for ; and then, that Hollanders were on

the way to occupy them; at the same time Mr. Draper told me that he had paid Bade moneys for such services; and in my last interview with him, he stated to me repeatedly that he had furnished Mr. Bade the money on the note in question, as a further *aid and inducement* for him to sell those lands. The note fell due about the first of June last, as I think; I had been ill for some weeks, and unable to attend to my business; owing to this and other causes, it had not prospered; the note was not paid at maturity; the money obtained on it had been used for partnership purposes; I therefore felt interested in procuring additional time; just before the note fell due, perhaps the same day, or a day or two afterwards, I called on Mr. Draper; I saw him two or three times in the course of as many days; Mr. Bade was with me at one interview, the first, I believe; no other person was present; at one of these interviews, I think when Mr. Bade was present, or if he was not present, the result of the interview was immediately communicated to him and sanctioned by him, I requested of Mr. Draper further time to pay the note, for the reason, among others, of the unusual late arrival of emigrants from Holland, on which our business at that time was mainly based; Mr Draper and myself spoke of emigrants being on their way to occupy his lands in Michigan, under his arrangement with Mr. Bade, as Mr. Bade had advised us; they had not yet arrived, and both of us considered their arrival doubtful. Mr. Draper was on the point of leaving for Europe, and expressed himself as extremely anxious to conclude the sale of his lands before he left; the land, he said, had already cost him a large sum, and he feared he should lose additionally his advances to Bade and the amount of the note, unless the lands were now sold as agreed upon. I then urged my own willingness, though not bound to do so, to forward the sale of the lands to any emigrants that might arrive during the season, without any additional cost to him. On these assurances and considerations, Mr. Draper agreed and promised not to press the collection of the note, nor to ask payment of it for some days; I wished him to fix some specific time for its payment, to which I might direct my efforts,

Draper *v.* Romeyn.

in conjunction with Mr. Bade, which he rather declined, but reiterated his promise and assurance that he would not press its collection ; it might remain for some days ; and he did not wish to make any more specific arrangements in regard to it ; he could only promise us that it should not be pressed ; and I think, in one of my interviews with him, he intimated that he would not disturb us before his departure for Europe, which was fixed for something like a week hence. When it became evident that we must suspend business, I communicated to him the arrangements we had made in regard to this note ; he refused to be bound by them, and, in subsequently liquidating the amount of our liabilities to him, this note was included, on the ground that we had arranged for its payment in a manner he refused to be bound by; its payment had been extended without his consent. We also owe him as a firm ; and both of us did, in July last, individually owe him ; I owe him still; and he has received no moneys, or security, or indemnity of any kind applicable to this note, or to other indebtedness."

*E. W. Stoughton*, for the appellant.

*A. F. Smith*, for the plaintiff.

*By the Court*, CLERKE, J. Did the plaintiff make such an agreement with the principal to extend the time of payment, as to entitle the surety to a discharge from his liability ?

It is a rule, too well settled to admit of dispute, now, that an extension of the time of payment for a single day, without the assent of the surety will exonerate him. But this extension of the credit must be founded on a consideration, and must be such an agreement as precludes the creditor from enforcing payment against the principal until the expiration of a specified period.

In this case, the evidence in relation to the alleged extension shows nothing like an agreement of this nature. There is nothing in it from which a sufficient consideration can even be inferred, or such a promise on the part of the plaintiff as would prevent him from *commencing an action against the principal at any*

VOL. XVIII.     22

*time after the note became due.* The witness, Wattson, says that when he called on the plaintiff, just before the note fell due, to request of him further time to pay it, the latter expressed his anxiety to close the sale of lands before he left for Europe, which lands Bade, the maker of the note, and the witness were employed by him as agents to sell ; the witness then "urged his own *willingness,* though not bound to do so, to forward the sale of the lands to any emigrants that might arrive during the season, without any additional cost to the plaintiff. On these *assurances* and *considerations,* Mr. Draper (the plaintiff) agreed and promised not to press the collection of the note, nor to ask payment of it *for some days* ; he (the witness) wished him to fix some specific time for payment," which the plaintiff rather declined. "*It might remain for some days.*" The willingness of the witness to serve the plaintiff in another matter could not be deemed a legal consideration to support any agreement ; and even if it were, the promise was too indefinite and uncertain to debar the plaintiff from resorting to his legal remedy against the principal at any time after the note became payable by its terms. The promise, at most, was merely gratuitous, and imported no legal obligation whatever.

The judgment should be affirmed.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]