HARRISON BERRY *vs.* BAXTER C. PULLEN & another.

Kennebec.   Opinion January 25, 1879.

*Statute of frauds.   Promissory notes.   Surety.   Extension of time.*

An oral agreement between the payee and principal maker of a promissory note, that the former will extend the time of payment so long as the latter will pay eight per cent interest, is not valid, and will not discharge the surety, though made without his knowledge and consent.

ON MOTION to set aside the verdict as against law and evidence.

ASSUMPSIT on the following promissory note: "Palermo, December 23, 1870. For value received, we jointly and severally promise to pay Harrison Berry or bearer one hundred dollars, in one year from date, with interest. B. C. Pullen. Surety, E. W. Pinkham." The defendant Pullen was defaulted. The other defendant, Edward W. Pinkham, pleaded the general issue, with a brief statement that he signed the note declared on as surety only; that he received no consideration therefor; that he signed it for the accommodation only of Baxter C. Pullen, as the plaintiff well knew; that, subsequent to the time when he so signed, the plaintiff, without the knowledge or consent of said Pinkham and for a valuable consideration, extended the time of payment thereof to a certain definite time, after the time of payment specified in the note, and after the maturity thereof, whereby the said Pinkham was released.

There was evidence tending to show that there was an oral agreement between the payee and the principal maker that the former would extend the time of payment so long as the latter would pay eight per cent interest; that some time thereafter elapsed before bringing the suit, and that nothing was paid on the note. The material part of the evidence on the point raised is stated in the opinion.

The verdict was for the defendant; and the plaintiff moved to set it aside as against law and evidence.

*E. W. Whitehouse*, for the plaintiff.

*S. & L. Titcomb*, for the defendant.

VIRGIN, J.  Probably no principle has ever been in substance more frequently repeated by courts than that, a surety is entitled to have his contracts performed according to its terms; and that if any alteration, either in substance or time of performance, is made therein, without the surety's consent, by parties knowing his relation to it, he thereby becomes absolved from all further liability thereon.

The rights and liabilities of sureties are well defined.  Whether or not a note, executed by two makers, discloses the fact that one of them is a surety for the other, their respective liability to the payee finds expression in the terms of the note,—each being alike liable to pay it according to its tenor.  Moreover it is not only the legal duty of the surety to pay the note at its maturity, but it is also his legal privilege to do so, for then he may at will seek indemnity from the principal.  For whenever the surety has paid the note to the holder, he has the right forthwith to sue and recover it of the principal, in an action at law, and be subrogated to all the rights of the holder in equity, among which is a suit by the latter against the principal.  If, therefore, the holder has by any act precluded or estopped himself from demanding payment of the principal, or has entitled the principal to claim exemption from payment during a single day beyond the time of the maturity of the note, his rights and remedies thereby become prejudiced, and he is thereby discharged.  For while it is the privilege of the surety to become subrogated to the rights of the holder by paying, that is the extent of his rights.  Therefore if the holder has bound himself, without reservation, not to receive payment from the principal, the latter may enjoin him from receiving it from the surety, who will thereby be prevented from asserting his legal and equitable rights against the principal and consequently be discharged.

One of the most common modes by which creditors let sureties off from their liability, is by giving time to their principals.  Thus if the holder of a promissory note, knowing one of the makers to be a surety for the other, agrees with the principal, without the knowledge and consent of the surety, to enlarge the time of payment thereof even for a day, the surety's liability is

thereby terminated. Mere gratuitous forbearance of whatever duration inside of the limitation bar, will not discharge; for it is not the forbearance, but the contract which operates the discharge. *Page* v. *Webster*, 15 Maine, 249. But before a surety, whose name was deliberately and understandingly placed upon a note to give it credit, can be thus absolved from liability, the law as well as justice and equity requires that, there shall be a valid, binding contract— one founded on a sufficient consideration, and the effect of which shall be to give further definite time to the principal, without the consent of the surety.

The matter of consideration and time in such contracts is copiously illustrated by a large number of cases, English and American, collated in the notes to Lead. Cas. Eq. under *Rees* v. *Berrington*, pp. 1867 *et seq.* and Brandt on Sur. and Guar. c. 14, 401, *et seq.*

Thus, it is said, the true question is whether the agreement to give time, or to vary the contract in any other particular, could have been enforced against the creditor, or as a cause of action. *Draper* v. *Romeyn*, 18 Barb. 166. Approved in *Wheeler* v. *Washburn*, 24 Vt. 293. *Turrill* v. *Boynton*, 23 Vt. 293. *Greeley* v. *Dow*, 2 Met. 176.

Again the test is expressed a little differently, being whether the creditor would have made himself liable to the principal by proceeding against him immediately after giving the promise of forbearance; for if he would not, the legal relation of the parties is unchanged and there is no equitable ground for exoneration of the surety and therefore there can be no discharge. Lead. Cas. *supra*. *Leavitt* v. *Savage*, 16 Maine, 72.

"By a valid agreement to give time," say the court in *Veazie* v. *Carr*, 3 Allen, 14, "is meant an agreement for the breach of which the maker has a remedy either at law or in equity." And the authorities generally concur in holding that the requisites of a valid agreement are essential, otherwise the creditor is not bound, and the rights of the parties not changed; and if not changed, the original contract is in force and may be performed.

There are numerous cases above referred to holding that, while the absolute payment by the principal and acceptance by the

creditor of usurious interest is a good consideration for an enlargement of the time of payment, an executory contract to pay such interest is not, and that therefore it will not absolve a surety. Among the cases in point is the early, well considered case of *Tudor* v. *Goodloe*, 1 B. Mon. 322. See also *Vilas* v. *Jones*, 10 Paige, 80. *Burgess* v. *Darcy*, 33 Vt. 618. *Smith* v. *Hyde*, 36 Vt. 303. *Myers* v. *First Nat. Bank*, 78 Ill. 257. In a word all concur in holding that the contract must be binding to effect the release. This rule must exclude oral contracts which the statute of frauds requires to be in writing. And so it has been expressly held. Thus, where the executrix of the acceptor of a bill of exchange orally promised to pay the holder out of her own estate, provided he would forbear to sue, and he did forbear in consequence, it was held that the drawer was not discharged, the promise being within the statute of frauds. Best, C. J. said : " If the promise made by the executrix be considered a promise *to pay* the debt with interest out of the assets, it gave no claim to the holder beyond what the bill gave him. . . If it is to be taken to be a personal promise of the executrix, it is void under the statute of frauds, not being in writing," *Philpot* v. *Bryant*, 4 Bing. 719.

To the same point is *Agee* v. *Steele*, 8 Ala. 948 ; the promise there being within another section of the statute of frauds,—one relating to an interest in land.

The application of these rules to the facts in the case at bar is decisive of the case in favor of the plaintiff. The principal (Pullen) is the witness who testified to the agreement. His testimony on this point is, in brief, that a short time after the note was due he saw the plaintiff, when the plaintiff told the witness that the note was due and wanted to know what he wanted to do about it. Witness answered, " I told him I hadn't the money. He told me that if I would give him eight per cent I might have that money. Said he, you can have it as long as you want it. I told him I would do it."

The intention of the parties, as shown by this testimony, is that from that time forward, so long as Pullen kept the money, he should pay eight per cent interest. If the agreement had been reduced to writing and signed it would have been a valid contract

and one which could be enforced; and as the parties then would have substituted another contract for the original, without the knowledge or consent of the defendant, he would have been discharged. But the contract not being binding, the rights of the parties were in nowise changed and the surety would not be thereby discharged. The verdict being against law must be set aside.

*Verdict set aside.*

APPLETON, C. J., DANFORTH, PETERS and LIBBEY, JJ., concurred.