THE MICHIGAN STATE NSURANCE Co. v. LINNIE S. SOULE
AND EDWARD P. FERRY.
LINNIE S. SOULE v. THE MICHIGAN STATE INSURANCE Co.
AND EDWARD P. FERRY.

*Foreclosure—Perfection of title—Estoppel from foreclosing—Suretyship for
mortgager.*

If a purchaser at a sale under an invalid foreclosure afterwards acquires the equity of redemption, it operates to perfect his own previous conveyance of the land and to discharge him from liability on his covenants of warranty, if that be the purpose of the parties.

If a purchaser of a parcel of mortgaged land assumes the whole mortgage debt, his land becomes the first fund to be resorted to for its satisfaction, and the land retained by the mortgager becomes the secondary or security fund.

A creditor's neglect to enforce his demand against his debtor at the request of the latter's surety, does not, in Michigan, release the surety.

A creditor's mere statement to his debtor's surety that the debtor's responsibility was sufficient security for the debt and that the surety would not be called upon, did not estop the creditor from resorting to the security if the claim was not renounced and the surety was not misled by the assurance to his disadvantage. Whether even a promise to discharge the surety would estop him where no consideration is shown for such a promise—Q.

The discharge of a surety by an extension of time on his principal's debt results from the contract for extension and not merely from forbearance to collect the debt or from a promise to forbear collection.

A notice of foreclosure by advertisement, purporting to be signed by the party foreclosing, is not fatally defective for being signed in the

wrong name if the true name is specified in the body of the notice ; the party is not required to sign it.   Comp. L. § 6915.

The general objection, on an appeal in proceedings to quiet title, that the sheriff's deed on foreclosure, under which complainant claims, was incompetent, irrelevant, and immaterial as evidence, will not be regarded; the specific defect must be indicated.

Appeal from Ottawa.   (Arnold, J.)   June 20–21.— October 3.

BILL to quiet title.   (Bill and cross-bill.)   Linnie S. Soule appeals.   Affirmed.

*Angel & Soule* and *Norris & Uhl* for appellant.

*Thomas J. O'Brien* for appellee.

COOLEY, J.   The circuit judge who took the testimony and heard these cases found material facts as follows :

That one Lucy Piquette was the patentee of certain lands in Ottawa county, including a parcel of about forty-four acres now claimed by these parties respectively.

That prior to August 6, 1860, she made a mortgage of said lands, which was subsequently the subject of a suit for foreclosure, in the Ottawa circuit court in chancery, in which suit decree for sale was made, and the lands were sold to William M. and Thomas W. Ferry.

That afterwards, and on December 16, 1867, said William M. and Thomas W. Ferry, for a valid consideration, by a deed with full covenants of warranty, conveyed seventy acres, including the lands now in controversy to James B. Soule.

That on August 28, 1868, James B. Soule mortgaged the lands so conveyed to one Edward L. Craw for the sum of three thousand dollars, of which mortgage, after it had been endorsed down to fifteen hundred dollars, the insurance company became the owner.

That the foreclosure of the Piquette mortgage was invalid, and did not cut off the equity of redemption, and on September 20, 1873, Lyman D. Norris became the

owner of such equity of redemption by deed from Mrs.
Piquette.

That afterwards, on June 15, 1875, Norris conveyed the
premises in controversy to Edward P. Ferry, executor of the
estate of William M. Ferry, at the request and by the pro-
curement of James B. Soule, who then continued to be the
owner of the title derived from the Ferrys, and also of Ed-
ward P. Ferry, executor as aforesaid, and who was also
agent and attorney of Thomas W. Ferry; and that it was
the intention and purpose of the parties to said conveyance
that the same should operate to perfect the conveyance
from the Ferrys to James B. Soule, and to discharge the
Ferrys from liability upon their covenants.

And that the force and effect of the Norris conveyance
was to perfect the title so conveyed by the Ferrys to Soule.

We concur in this finding, and do not deem it necessary
to enlarge upon it. Some further facts, however, require
to be now stated.

March 10, 1871, Soule conveyed twenty acres, part of the
land, for a consideration of $5000, to one Alonzo J. Saw-
yer, and as a part of the consideration Sawyer was to pay
$1500, the balance owing on the Craw mortgage, then held
by the insurance company. The deed was expressly made
subject to this payment; and in January, 1872, Soule ob-
tained from Sawyer a bond of indemnity as further security.
He afterwards conveyed six acres more of the land to his
sister, Mrs. Craw.

Flavius J. Hough was then the general agent of the in-
surance company, and he was notified of this sale to Sawyer,
and that Sawyer assumed the payment of the mortgage.
Sawyer himself requested Hough to notify him as interest
came due, and he did so, and Sawyer paid interest for sev-
eral years.

The lands were known as fruit lands, and Sawyer, who
was a man of considerable means, was purchaser for a rise
of other lands in the neighborhood. In 1876, however,
there was a very great depreciation in the market value of

these lands, and Sawyer became unable to meet his obligations. The insurance company then called upon James B. Soule for payment; failing to obtain it, foreclosed its mortgage by advertisement, and bid in the land. After the time for redemption expired, the company obtained possession, and filed its bill to quiet the title. Linnie S. Soule, who, with knowledge of all the facts, had received a conveyance from James B. Soule of the lands in dispute, filed a cross-bill claiming title and praying decree accordingly.

The circuit court made decree as prayed by complainant in the original bill, and the complainant in the cross-bill appeals. Edward P. Ferry, who is defendant in both bills, makes no claim.

The decree is right if the foreclosure of the Craw mortgage is sustained. But it is contended by Mrs. Soule that there are fatal defects in the proceedings, and also that before the foreclosure the insurance company had estopped itself by the acts of its general agents from resorting to her lands.

The supposed estoppel depends upon the testimony of James B. Soule, and of Craw who is his brother-in-law. Soule testifies that shortly after the sale to Sawyer, having an ambition to get the remainder of his farm freed from incumbrance, he asked Hough to have the insurance company release it. Hough said he would see about it and let him know. Some time after that Hough told him it was a great deal of bother to release it, or something of that kind, but that he considered the land sold to Sawyer good security and satisfactory and all that, and that he was glad to deal with a man like Mr. Sawyer who he knew would pay the interest. After that conversation Soule was not called upon to pay interest until 1876. Again he says: "Mr. Hough told me that it would be a good deal of bother for them to release a part of the land; that they had extended the time to Mr. Sawyer, and that the twenty acres and Sawyer were just as good security as the insurance company wanted; that he himself would be glad to have

the Sawyer land for twice the amount of the mortgage; that the insurance company would never look to me or my land for any part of the money, and that I might rest at ease about the matter." Craw's testimony tends to confirm this evidence, and Hough's to contradict it.

No claim is made upon the evidence that there was in fact at any time an extension given to Sawyer, and Sawyer himself testifies that there was none. The demand was simply allowed to remain uncollected so long as the interest was met. Soule claims, however, that by the sale to Sawyer and the assumption of the mortgage by the purchaser, Sawyer in equity became the principal debtor, and Soule, the mortgagor, the surety. If this is not strictly correct, so far as the parties are concerned, the transaction had the effect to make the land sold to Sawyer the first fund to be resorted to, and the land retained by Soule the secondary or security fund. *Metz v. Todd* 36 Mich. 473. Hough, it is shown, was aware of this fact, and made what statements he did make with knowledge of it.

The authority of *Faxton v. Faxon* 28 Mich. 161, is invoked to support an estoppel. That was the case of a distinct renunciation of a demand, made for the purpose of inducing a party to change materially his plans of life, and to incur heavy expenditures; and it was very justly held that after the change had been made and the expenditures incurred in reliance upon the renunciation, the creditor must abide by it. In effect a parol contract, made on ample consideration and performed on one side, was specifically enforced in that case. But in this case there was no contract and no consideration; there was simply a request for a discharge not acceded to, and some very strong statements that the party making the request would not be called upon for payment. It is not claimed that in this State the failure of the creditor to enforce his demand against the principal at the request of the surety would have the effect to release the surety; for *Pain v. Packard* 13 Johns. 174, which originated that doctrine, is repudiated in this State as it is in

most others. *Inkster v. First Nat. Bank* 30 Mich. 143. The estoppel, then, must stand upon the representations.

In *Parker v. Leigh* 2 Starkie 228, the acceptor of a bill of exchange drawn by one Williams, was sued upon it. It was proved in defense that the plaintiff, when applied to on behalf of the defendant, against whom he held other claims, had said he should look to Williams for payment of this bill, and upon that statement the other demands had been paid. Lord Ellenborough held this to be no defense, there being neither an express renunciation of all claim, nor a consideration for any. A somewhat similar case is *Adams v. Gregg* 2 Starkie 531; and there the statement of the holder of a bill to the accommodation acceptor, that he should not be troubled upon it, was held no defense. And see *Dingwall v. Dunster* Doug. 247; *Ellis v. Galindo* Doug. 250, note.

Two or three American cases seem to be very directly in point. In *Mahurin v. Pearson*, 8 N. H. 539, it appeared that the surety on a note had informed the holder that he wished it sued as soon as due, as he did not wish to stand security any longer. The holder replied that a part of the note had been paid and arrangements made for the remainder, and he should not call on the surety for it. Parker, J., said: "The evidence offered is not sufficient to discharge the surety. Mere delay by the creditor to collect the debt, after a request to that effect by the surety, will not operate as a discharge; and we are of the opinion that the evidence does not show such a renunciation of all claim upon the surety, as can avail to discharge him without any consideration paid, or evidence of loss sustained. Whether evidence of the latter description is admissible in such case may perhaps admit of question." In *Driskell v. Mateer* 31 Mo. 325, the evidence was that the surety said to the creditor that he must make the amount of the note out of the principal, and the creditor replied that he need put himself to no further trouble about the note; that he had made a present of it to the principal. This was held to be no release of the surety unless in consequence thereof he had

changed his situation, as by surrendering securities or forbearing to demand them. A case much like this and decided the same way is *Brubaker v. Okeson* 36 Penn. St. 519.

There is no claim in this case that Soule was misled as to the facts, unless it be as to the giving of time to Sawyer, which by itself was unimportant; for if time had been given neither the company nor Soule would have been bound by it, unless it appeared that the extension was for a consideration; for it is not the forbearance to collect, or the promise to forbear, but the contract, which operates the discharge. *Page v. Webster* 15 Me. 249: s. c. 33 Am. Dec. 608; *Tudor v. Goodloe* 1 B. Mon. 322; *Greely v. Dow* 2 Met. 176; *Veazie v. Carr* 3 Allen 14; *Agee v. Steele* 8 Ala. 948; *Wheeler v. Washburn* 24 Vt. 293; *Howell v. Sevier* 1 Lea 360: s. c. 27 Am. Rep. 771; *Berry v. Pullen* 69 Me. 101: s. c. 31 Am. Rep. 248. There is not only in this case no word respecting a consideration for an extension, but any promise of an extension is disproved. Meantime the fact was understood that the debt remained undischarged, as well as to Soule as to the land; and it was with this fact in mind that Soule confided in an assurance of an agent that he would not be called upon by the principal to pay the debt. Meantime he surrendered no security, but retained his indemnifying bond. Neither did he change his situation in reliance upon the assurances, unless it can be said that improving his own land was such a change. But as, previous to the collapse in 1876, he believed, as Hough did, that the land sold to Sawyer was ample for the satisfaction of the mortgage, it is clear that he did not suppose he was exposing property to loss by his improvements. He was putting his land in condition for use, and had every reason to suppose, and did suppose, he should enjoy his improvements in any contingency. Why should he not suppose so? He had sold the land which was liable before his own for more than three times the amount of the debt, and the record contains no evidence that any one supposed the

price was extravagant. The very great fall in market value was, evidently, wholly unexpected.

It would be dangerous doctrine which should make such talk as was sworn to in this case an absolute discharge of the surety, when there was no misleading as to the facts, no renunciation of a claim, and no promise to give a discharge, even if that could be effectual; and when it is not claimed that there was any consideration whatever upon which to base a promise. If the law were to enforce such assurances as were said to have been made here, it ought to enforce promises to make gifts; for that, in its final results, would be what this would amount to.

Passing by, then, the question made by the insurance company, whether Hough, who had no authority to give a written discharge to Soule, could nevertheless discharge his land by oral statements, and conceding that the company was bound by whatever was said by him, we fail to find an estoppel made out, and are of opinion that the company was at liberty to foreclose its mortgage against all the land, as it assumed to do.

It remains to see whether valid objections to the foreclosure sale are shown.

The record of the evidence returned to us does not contain the papers proved before the judge, but only his statement of what they were, and what objections were made to them. The insurance company, it is stated, offered in evidence the sheriff's deed on foreclosure by advertisement, together with copy of notice and proof of publication attached. The sheriff's deed was objected to as incompetent, irrelevant and immaterial; and the notice as fatally defective because it was signed "Michigan State Insurance Company" instead of "*The* Michigan State Insurance Company" which is the corporate name. This last very technical objection we pass by with the simple remark that the statute does not require the party foreclosing to sign his name to the notice : it is sufficient if the name is specified therein. Comp. L. § 6915. We are not informed that it was not. The general objection to the deed was worthless,

unless some specific defect was pointed out, and it does not appear that such was the case. The judge appears to have decided correctly.the only specific objection which was made, and we must assume that if there had been any other possessing merit it would have been suggested. On the record before us, the foreclosure is not successfully assailed.

The decree should be affirmed with costs.

The other Justices concurred.