NATIONAL BANK OF COMMERCE v. GILVIN.

(Court of Civil Appeals of Texas. Amarillo. Dec. 14, 1912. Rehearing Denied Jan. 4, 1913.)

1. PRINCIPAL AND SURETY (§ 156*)—ACTION BY CREDITOR AGAINST SURETY—ANSWER—SUFFICIENCY.

In an action against a surety, an answer, alleging that the creditor, without the surety's knowledge or consent, extended the time of payment, but not alleging that such extension was for any definite period or upon any consideration, was insufficient, since it apparently showed rather a mere neglect to immediately enforce collection than a definite and agreed extension.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 423–426; Dec. Dig. § 156.*]

2. PRINCIPAL AND SURETY (§ 156*)—ACTION BY CREDITOR AGAINST SURETY—ANSWER—SUFFICIENCY.

In an action against a surety, an answer, alleging that plaintiff did not sue on the debt at the first term of court after maturity, but not alleging that any statutory notice to sue was given or any fact making it obligatory on the creditor to sue at the first term of court, was insufficient.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 423–426; Dec. Dig. § 156.*]

3. PRINCIPAL AND SURETY (§ 125*) — DISCHARGE OF SURETY—NEGLECT TO PROCEED AGAINST PRINCIPAL.

Mere passivity or inaction by a creditor will not discharge a surety, even though the debt could have been collected from the principal if the creditor had acted promptly, where the creditor acts in good faith and takes no affirmative action detrimental to the surety's rights.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 312–328; Dec. Dig. § 125.*]

4. PRINCIPAL AND SURETY (§ 156*)—ACTION BY CREDITOR AGAINST SURETY—ANSWER—SUFFICIENCY.

A surety, seeking to exonerate himself on the ground of the creditor's neglect or carelessness, should plead the specific facts constituting such negligence, and not mere general allegations of negligence.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 423–426; Dec. Dig. § 156.*]

5. PRINCIPAL AND SURETY (§ 114*) — DISCHARGE OF SURETY—RELEASE OR LOSS OF OTHER SECURITIES.

A surety on a note payable to a bank is not discharged because the bank fails to exercise its privilege of appropriating to the payment of the note a deposit to the credit of the principal in its possession.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 240–243; Dec. Dig. § 114.*]

6. PRINCIPAL AND SURETY (§ 126*) — DISCHARGE OF SURETY—NEGLECT TO PROCEED AGAINST PRINCIPAL.

A surety is not discharged because the creditor, after notice to do so, fails to present his claim for payment to the guardian of an insane principal and sue thereon if payment is refused, since, in the absence of statutory authority, a surety cannot require the creditor to proceed against the principal, and Rev. St. 1895, art. 3811, authorizing a surety, by notice in writing, to require the creditor forthwith to institute suit on the contract, does not authorize notice to proceed against the estate of an insane principal; and hence an answer alleging such failure was insufficient, especially where it merely alleged the giving of notice and did not allege noncompliance therewith.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 329–351; Dec. Dig. § 126.*]

7. PRINCIPAL AND SURETY (§§ 91, 126*)—DISCHARGE OF SURETY—NEGLECT TO PROCEED AGAINST PRINCIPAL.

Upon the death of a principal, a creditor may look to the surety, and cannot be compelled by the surety to first resort to the probate court to collect the debt; and hence a failure to do so after notice by the surety did not release the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 141, 329–351; Dec. Dig. §§ 91, 126.*]

8. PRINCIPAL AND SURETY (§ 125*) — DISCHARGE OF SURETY—NEGLECT TO PROCEED AGAINST PRINCIPAL.

Where a creditor, after presenting his claim to the guardian of an insane principal and procuring its allowance, negligently and carelessly permitted the debt to go unpaid, the surety was not thereby discharged; the creditor owing the surety no duty of active diligence.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 312–328; Dec. Dig. § 125.*]

9. PRINCIPAL AND SURETY (§ 126*)—NEGLECT TO PROCEED AGAINST PRINCIPAL—NOTICE BY SURETY—SUFFICIENCY.

Under Rev. St. 1895, art. 3811, providing that a surety may, by notice in writing, require the creditor forthwith to institute suit upon the contract, a notice reading: "You will please file claim with the probate court for payment. The estate * * * is now being represented * * * by E. as administratrix, and there is plenty of property or funds there to pay you. Please kindly see to this matter at once, and oblige"—is insufficient, even assuming that article 3811 authorizes a surety to require the creditor to present his claim to the probate court, since such a notice must be a full, explicit, and peremptory demand that suit be brought forthwith, with the further statement that the surety will not be bound any further if that is not done.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 329–351; Dec. Dig. § 126.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**10. PRINCIPAL AND SURETY (§ 136*)—REMEDY OF CREDITOR AGAINST SURETY—DEFENSES—ESTOPPEL.**

A creditor was not estopped to proceed against a surety on the theory that, by looking to the estate of the deceased principal for collection for several years, he permitted the surety to believe that he was released and placed him in a position that he could not reimburse himself, where it appeared that he requested the creditor to pursue the estate, was informed as to the status of the claim before the probate court, and was cognizant of the progress being made.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 385; Dec. Dig. § 136.*]

**11. PRINCIPAL AND SURETY (§ 89*)—REMEDY OF CREDITOR AGAINST SURETY—DEFENSES—ESTOPPEL.**

A creditor was not estopped to proceed against a surety because his attorney informed the surety that the administratrix of the principal had money with which to pay the debt and that the surety need not trouble himself about the matter, where, before the surety altered his position to his injury, the attorney notified him that the administratrix refused to pay the claim.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 133, 133½, 136–139; Dec. Dig. § 89.*]

Appeal from Potter County Court; W. M. Jeter, Judge.

Action by the National Bank of Commerce against D. Gilvin. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Reeder & Dooley, of Amarillo, for appellant. Cooper, Merrill & Lumpkin, of Amarillo, for appellee.

PRESLER, J. This suit was upon a promissory note for the principal sum of $554.50, dated November 30, 1906, due one month after date, executed and delivered by one McKinstry and appellee, payable to the order of appellant bank. Upon the trial thereof before the court without the intervention of a jury, judgment was rendered for appellee on the ground that appellee signed the note merely as surety for said McKinstry and that, appellant having pursued the estate of McKinstry for four years, in an effort to collect said debt, and having permitted appellee to believe that he was relieved from said debt, and having placed appellee in such position that he could not probably now collect said debt or any part thereof or reimburse himself thereon from said estate, appellant is now estopped from maintaining said debt against said appellee.

Appellant, under various assignments, here complains of the action of the court in overruling its general demurrer and several special exceptions to appellee's second amended answer (on which trial was had), and contends that none of the allegations therein contained are sufficient to warrant the discharge of a surety (the appellee). The material allegations of said amended original answer are substantially as follows:

"That therefore on the 30th day of November, A. D. 1906, this defendant executed the note described in plaintiff's petition, as surety, for one J. T. McKinstry. That at the time of the execution and delivery of said note said McKinstry was solvent, owner of an estate of the value of at least $15,000 in excess of his debts and obligations. That the defendant merely executed the note as surety for said McKinstry, and it was so understood and agreed by the plaintiff's president. That said note matured 30 days from its execution, at which time said McKinstry was solvent and able to pay said note and had an estate sufficient from which the plaintiff could have compelled the payment of said note, but that plaintiff at maturity of said note permitted said McKinstry to extend the time of payment thereof and continued permitting such extensions without knowledge or consent of the defendant, and from said time has continued to permit the said note to be extended, thereby relieving and releasing this defendant from liability thereon. That said note was not sued upon at the first term of court after its maturity, and no ground or reasons are set up by plaintiff for failure so to do. That, if plaintiff failed to collect said note from the estate of the said McKinstry, its failure so to do was its own carelessness and negligence.

"By further pleading defendant pleads: That he is not now, nor has he ever been at any time since the 30th day of November, 1906, primarily responsible for the payment of said note, but has at all times been only a surety for the said McKinstry. That at the time of the execution and delivery of said note the said J. T. McKinstry was the possessor and owner of property, both real and personal, situated in Amarillo, Potter county, Tex., and vicinity, of the real value of from $8,000 to $15,000. That said J. T. McKinstry conducted a real estate business and deposited with the plaintiff moneys collected and received by him in said business and owned by him, and that after the execution of said note the said McKinstry continued to do a banking business with the plaintiff, and at numerous and frequent dates after the maturity of said notes and prior to May, 1907, had on deposit with said plaintiff sum or sums of money more than sufficient to pay off and discharge said note. That plaintiff negligently and carelessly permitted the said J. T. McKinstry to withdraw said moneys and to expend the same and extended the time for the payment of said note without the knowledge or consent of this defendant. That at some time in May, 1907, long after the maturity of this note, said McKinstry was adjudged insane, and a guardian of his estate was appointed and took possession and charge of the property. That at the time the estate was solvent and was more than sufficient to pay off and satisfy all obligations owing by the said McKinstry,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

including the note upon which this suit is based. That shortly after the appointment of the guardian the defendant gave the plaintiff notice in writing to present said claim to said guardian for payment, and to sue thereon in the event payment was refused. That plaintiff presented this note to said guardian, that the same was duly allowed, and that there were ample funds then on hand to pay the same, together with all other indebtedness against the estate of the said J. T. McKinstry; but by negligence, carelessness, and inattention plaintiff permitted said claim to go unpaid, and thereby this defendant was relieved and discharged from further liability thereon. That, if plaintiff had given the matter attention and care, said guardian could and would have paid said indebtedness. That, if defendant be mistaken as to said estate being able to pay all of said indebtedness, a large portion of it could and would have been paid had the plaintiff given the matter the care and attention of an ordinary prudent person under similar circumstances.

"Defendant further shows to the court: That after the appointment of said guardian, and some time in the year 1908, the said McKinstry died, and that thereafter Mrs. Ella McKinstry was appointed administratrix of said estate, and at such time the estate was still solvent and owned sufficient property to discharge and pay off all obligations. That this defendant was informed that said plaintiff herein had failed to get the said note paid by the guardian, and that thereafter he again on the 17th day of November, 1909, gave the plaintiff herein notice in writing to present said claim for allowance and payment to said administratrix, and in the event payment was refused then to bring suit thereon and collect said debt. That when such notice was given said plaintiff then elected to proceed against said estate of the said J. T. McKinstry and did file said claim with said administratrix, and said administratrix did allow said claim, and that at this time the said estate was solvent and able to discharge all of the obligations of the said J. T. McKinstry. That, if said estate was not entirely solvent, it was nevertheless able to pay a large portion of this claim, together with other claims of said class in said administration proceeding; but the plaintiff negligently and carelessly permitted the administratrix of said estate to appropriate said moneys belonging to said estate to her own use and benefit, and, if plaintiff failed to collect said indebtedness, it was through said want of care and attention on the part of said plaintiff. That, had plaintiff given the matter careful attention, said administratrix could have been compelled to have paid said debt out of the property belonging to the estate of the said McKinstry, and that, if plaintiff failed to collect said indebtedness from said administratrix, it was due and chargeable to

plaintiff's own carelessness and inattention.

"Defendant further shows that, when plaintiff filed said claim with the guardian as hereinbefore alleged, this defendant believed and understood that plaintiff had thereby elected to look to the estate of said McKinstry, and that this defendant could not and would not be longer liable therefor, and that when this defendant had given plaintiff notice to present and file said claim with said administratrix, and the plaintiff elected to file said claim with said administratrix and refused to bring suit against this defendant in the manner and within the time allowed by law, this defendant was discharged and relieved from any further liability thereon. Defendant further shows to the court: That by all of the acts and conduct of the plaintiff herein in electing to pursue the remedy pursued by them, and in failing and refusing to sue this defendant after the written notice herein given, the plaintiff is now estopped in law from demanding or requiring any payment from this defendant. That the estate of the said J. T. McKinstry has now been dissipated and squandered and is totally insolvent, and that plaintiff has acquiesced in permitting the administratrix to squander, misappropriate, and dissipate said estate, and that at this time, if this defendant was compelled to pay said note, he could and would not be able to recover anything from the estate of the said McKinstry."

Appellant, in its brief, under its said special exceptions, presents for consideration seriatim its objections to the sufficiency of appellee's answer in detail, and we will here consider them in the order thus presented.

[1] Under appellant's second assignment of error, it is insisted that the court erred in overruling appellant's special exception to that portion of appellee's answer wherein it is alleged that appellant had extended the time for the payment of the note sued upon without appellee's knowledge or consent, thereby releasing appellee from liability on said note, on the ground that the facts pleaded on that issue by appellee constitute no defense to appellant's cause of action, in that appellee did not allege that any consideration passed from McKinstry to plaintiff for such extension of time and that no definite extension of time is plead. We are of the opinion that this objection to appellee's pleading is well taken; appellee's pleading going merely to the effect that the appellant bank extended the time of payment without the knowledge and consent of appellee, and not alleging that said extension was for any definite period of time or upon any consideration whatever. It would appear that the action of appellant complained of in said answer was rather a neglect to immediately enforce collection by suffering the note to remain for the time being unpaid than a definite and agreed extension. Lehnert v. Lewey, 142 Ala. 149, 37 South. 921;

Smith v. Freyler, 4 Mont. 489, 1 Pac. 214, 47 Am. Rep. 358; Brooks v. Allen, 62 Ind. 401. As stated by the Supreme Court of this state, in the case of Hunter v. Clarke, 28 Tex. 163: "That the giving of time to the principal by the creditor without a binding contract to do so or by forbearance or indulgence, or a failure by the creditor to prosecute his demand with active diligence, does not release the surety, is not an open question in this court. Burke v. Cruger, 8 Tex. 66, 58 Am. Dec. 102; Cruger v. Burke, 11 Tex. 694; Payne v. Powell, 14 Tex. 600. The surety has a remedy in his own hands by which he can protect himself. If he elects, as in this case, to lie still and take no action either to discharge his obligation to his creditor (who has trusted him) by having the debt paid, or to protect himself by requiring in a proper mode greater diligence of the creditor, he must suffer."

[2] We also think that appellant's third assignment of error should be sustained, which complains of the ruling of the court in overruling its special exception to that portion of appellee's answer which sets up that the note was not sued upon at the first term of the court after its maturity. There is no fact alleged by appellee which made it obligatory upon appellant to sue upon said note at the first term of court after maturity. No obligation rested on appellant to sue appellee at said first term of court; no statutory notice having been pleaded. Failure to sue at such time did not release appellee.

[3] Under its fourth assignment, appellant complains of the overruling by the court of its third special exception to that portion of defendant's answer wherein it is alleged that plaintiff had failed to collect said note by its own negligence and not by the procurement of defendant, etc. An inspection of that portion of defendant's pleading at which this exception was leveled shows that appellee's allegations go no further than to aver that McKinstry, the principal on the note, was solvent at the time of the maturity of the note, and that plaintiff could have exacted the payment of said note by McKinstry had it proceeded against him. Granting these allegations to be true, we are of the opinion that appellee's obligation as surety would not be affected thereby. As long as the payee acts in good faith, taking no affirmative action detrimental to the surety's rights or securities, his mere passivity or inaction will not discharge the surety, even though he could have made the debt out of the principal had he acted promptly. Terrel v. Townsend, 6 Tex. 149; Hunter v. Clark, 28 Tex. 159; Robertson v. Angle, 76 S. W. 317; Coombs v. Parker, 17 Ohio, 289, 49 Am. Dec. 459; Fanning v. Murphy, 126 Wis. 538, 105 N. W. 1056, 4 L. R. A. (N. S.) 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435; 32 Cyc. 93–95.

[4] It is to be further noted that appellee's allegations of negligence objected to are couched in the most general terms. Seeking to exonerate himself on the ground of appellant's neglect or carelessness, it would seem that specific facts relied on to constitute such negligence should be pleaded, and not mere general allegations. In re Thomas' Estate, 26 Colo. 116, 56 Pac. 907; Stewart v. Barrow, 55 Ga. 664.

[5] Appellant, as shown by its fifth assignment of error, also excepted to that part of appellee's answer wherein it is alleged that J. T. McKinstry, principal on the note sued on, conducted a real estate business and deposited with appellant moneys owned by him and continued to do a banking business with appellant, and, at numerous and frequent dates after the maturity of the note sued upon, McKinstry had on deposit with appellant more than sufficient money to pay off and discharge said note, and that appellant permitted McKinstry under such conditions to withdraw said moneys from said bank, and that appellant negligently allowed McKinstry to withdraw and expend such money. While there is some conflict of opinion among the courts of this country as to whether a payee bank releases a surety on a note by failing to appropriate to its payment a deposit to the credit of the principal in possession of such bank at or after the maturity of such note, we are of the opinion that the weight of authority is to the effect that such omission does not operate to discharge the surety, and in this state we conclude the rule is fairly well established that such failure will not discharge the surety. Houston v. Braden, 37 S. W. 467; Davenport v. Bank, 126 Ga. 136, 54 S. E. 977, 8 L. R. A. (N. S.) 944, 115 Am. St. Rep. 68, 7 Ann. Cas. 1000. In the case of Houston v. Braden, supra, it was alleged that, after the execution and delivery of the note, Braden had many and divers transactions with Sam Maverick in which the said William Braden deposited or paid to the said Sam Maverick at his said bank sundry and divers amounts of money, which during the period from September, 1888, to March, 1891, aggregated the sum of about $55,000; that all of said payments were properly applicable to the satisfaction of said note; that at the time of said payments the said Braden did not apply the same, nor has the said Maverick so done, but the said payments were credited to the general account of the said William Braden. This part of the answer was excepted to as being irrelevant and immaterial and stating no defense, because the allegations show that the deposits were credited to the open account of William Braden, and because the times the deposits were made were not stated. The court said: "We are of the opinion that the exception should have been sustained. Where the principal on a note payable to a bank has funds on deposit in the bank after maturity more than sufficient to pay it, the omission of

the bank to appropriate the deposit to the payment of the note will not discharge the surety. Voss v. Bank, 83 Ill. 599 [25 Am. Rep. 415]; Bank v. Smith, 66 N. Y. 271 [23 Am. Rep. 48]; Bank v. Le Grand, 103 Pa. 309 [49 Am. Rep. 126]. As said in the last case: 'It is beyond question that the bank, in the absence of any special appropriation of the deposit by the depositor, would have the right to apply a general deposit to the payment of any existing material indebtedness of the depositor. But that privilege is a right which the bank may or may not exercise in its discretion.' "

[6] Appellant, under its sixth assignment of error, complains of the action of the court in overruling its fifth special exception to that part of appellee's answer wherein it is alleged that in May, 1907, J. T. McKinstry, the principal on the note sued on, was adjudged insane, and a guardian was appointed for his estate, that at said time the estate was solvent, that shortly after said appointment appellee gave appellant notice in writing to present his claim to said guardian for payment and to sue thereon in the event payment was refused, etc., contending that said facts, if true, constituted no defense to appellant's cause of action, and further that there was no allegation to the effect that appellant did not comply with appellee's request, nor that if he had complied with the same he would have received payment of said claim. We think this contention should be sustained, and that the objection to the pleading was well taken. The rule which seems to prevail in a great majority of the states is that the surety cannot accelerate the action of a dilatory creditor by notice to proceed against the principal, unless there is express statutory authority to that end. We have in this state no statute clothing a surety with power to require by notice a creditor to proceed against the estate of an insane principal under guardianship at the hazard of discharging the surety by failing to so proceed. It can hardly be contended that article 3811 of the Revised Statutes authorizes a surety to require action against the principal's estate under such circumstances, for it is clear that said article contemplates a principal amenable to suit forthwith, while under the circumstances of this case the law would not have permitted appellant to proceed directly against the principal, but it would have been incumbent upon the appellant to file a claim with the guardian, and in no event could a suit have been brought unless the claim had been disallowed by the guardian or disapproved by the court, and then suit would have to be against the guardian and not against the principal. Even if the surety had statutory authority to require by notice a creditor to proceed against the estate of an insane principal under guardianship, a pleading alleging such notice is deficient unless it went further and averred that the notice was not complied with.

[7] The authorities of this state having firmly established the doctrine that upon the death of a principal the creditor may look to the surety as primarily liable and that the surety cannot force the creditor to resort to the probate court in an effort to collect his debt, we are inclined to the opinion that the same rule should apply in a case where the principal is under guardianship. In the first instance, death has removed the principal, and the creditor can no longer proceed directly against the principal. In the second instance, the law has placed the principal in such attitude that the creditor cannot proceed directly against him, and he would have to resort to his estate in identically the same way as if he were dead, and it would appear that the reason for the rule is equally applicable in the case of a guardianship. However, we do not rest our action sustaining the assignment in question upon this conclusion. It cannot be successfully contended that had appellant failed to present the note as a claim to the guardian, after being requested so to do, the surety, the appellee, would thereby be released. 32 Cyc. 99–100; 27 Am. & Eng. Enc. of Law (2d Ed.) 512; article 3811, Revised Statutes; Scott v. Dewees, 2 Tex. 154; Scantlin v. Kemp, 34 Tex. 388; Willis v. Chowning, 90 Tex. 617, 40 S. W. 395, 59 Am. St. Rep. 842.

[8] We are further of the opinion that there is no merit in the contention of appellee, as set forth in his answer, to the effect that appellant having presented his claim to the guardian of the estate of J. T. McKinstry, insane, and procured allowance thereof, and negligently and carelessly permitted said matter to go unpaid thereby released and discharged the appellee from liability; the law being well settled to the effect that the creditor owes the surety no duty of active diligence, and that inaction, indulgence, or passivity on the part of the creditor or failure to promptly subject securities or apply funds available for the satisfaction of the debt will not discharge the surety, and that this is true though the creditor could have made the debt out of the principal had he acted promptly. Taylor v. Maryland, 73 Md. 208, 20 Atl. 914, 11 L. R. A. 852; Whitehouse v. American Surety Co., 117 Iowa, 328, 90 N. W. 727; Terrel v. Townsend. 6 Tex. 149; Hunter v. Clark, 28 Tex. 159; Fanning v. Murphy, 126 Wis. 538, 105 N. W. 1056, 4 L. R. A. (N. S.) 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435; 27 Am. & Eng. Enc. of Law (2d Ed.) 508; 32 Cyc. pp. 93–96.

What we have said above also applies to appellee's contention, as set forth in his answer, to the effect that he is discharged from liability as surety because of the alleged

negligence and carelessness of appellant in failing to collect his debt in the administration of the estate of J. T. McKinstry, deceased, after appellee had notified him in writing to present said claim for allowance and payment to the administratrix.

We are of the opinion that, even conceding that plaintiff was negligent in prosecuting its claim both before the guardian and in the administration, appellee would not be thereby released from liability as surety on the note sued on, and that the rule as announced in Hunter v. Clark, supra, is directly applicable to this case. It is also stated in 32 Cyc. pp. 94 and 95, that: "The delay in enforcing the claim against the principal will not release a surety although it occurs after suit has been instituted. Delay in issuing execution after judgment has been obtained does not discharge a surety, even if the principal disposes of his property meanwhile, or it is destroyed or is discharged from the lien of the judgment. Delay after a levy on the principal's property is not a defense to his surety, although the principal avails himself of an adjournment of an execution sale to procure a release of his property as exempt." The application to this case of the above is patent. Even though appellant files his claim with the guardian and with the administratrix, still this step did not in law impose upon him any duty of active diligence in obtaining payment of said claim, for the law imposes the duty of activity in such cases upon the surety rather than the creditor. In 27 A. & E. Enc. of Law, at page 521, it is stated that: "In conformity with the general doctrine that the creditor owes no duty of active diligence to the surety, it is held that he is not bound to sue out execution after judgment is recovered, in the absence of a statute to such effect; nor, when issued, is he bound to have the execution levied. He may withdraw it before the levy, or suspend the levy, and, if there be no binding agreement to give time, the surety, by the weight of authority, is not discharged, since it is the privilege of the surety at any time to pay off the judgment and be subrogated to the creditor's right of proceeding with the levy." Again, at page 510, same authority, it is stated that: "The rule is the same whether the delay or indulgence be granted to the principal before, after, or during the prosecution of a suit. The liability of the surety is not affected by the fact that the creditor discontinues suit already instituted or allows the judgment to expire by limitation." In Taylor v. Maryland, supra, it is stated that: "The first additional plea alleged, in substance, that Mrs. Miller made no effort to collect the money from the trustee, and that the fund was dissipated in consequence, and that it was not paid to her by reason of her own laches and neglect, whereby the sureties were discharged. * * * We think

152 S.W.—42

there was no error in the court's ruling on the demurrer to the first plea making defense on equitable grounds. The creditor is under no obligation to use diligence in pursuing his debtor, and where his failure to do so amounts merely to inaction or passivity, this is no defense of which sureties can avail themselves when sued for his default."

[9] We therefore conclude that appellee's defense as set out in its answer, and considered as a whole and as to all its parts, is deficient and fails to show any sufficient ground in law for the discharge of appellee from liability upon the note sued on, and that the trial court should have sustained appellant's general demurrer and special exceptions to the same, and even if it be conceded, as contended by appellee, that his pleading is sufficient against the general demurrer and the special exceptions leveled against it, to admit the evidence offered in support of the same, we are of the opinion that if article 3811, Revised Statutes, can be applied to such case as this (and we think it has no application), the notice as shown by the evidence, as given by appellee to appellant, both in the guardianship and in the administration, was clearly insufficient to impose upon appellant any duty or action or active diligence, because such notice, in order to be effective, must be a full, explicit, and peremptory demand that suit be brought forthwith, with the further statement that the surety will not be bound any further if such is not done. The notice in question, after the administratrix had been appointed, was as follows: "Amarillo, Texas, Nov. 17, 1908. Amarillo National Bank of Commerce, Mr. J. L. Smith, President, City. The note of J. T. McKinstry, on which I am surety, dated in December, 1906, for something over $500.00. You will please file your claim with the probate court for payment. The estate of said J. T. McKinstry is now being represented in said court by Mrs. Ella E. McKinstry, as administratrix, and there is plenty of property or funds there to pay you. Please kindly see to this matter at once and oblige, Yours very truly, D. Gilvin." The notice given during the pendency of the guardianship was similar and in substance like the above. Behrns v. Rogers et al., 40 S. W. 419; Williams v. Ogg, 42 Tex. Civ. App. 558, 94 S. W. 420; articles 3811 and 3812, Rev. Stat.

[10] We concur in the contention of appellant, as set forth under his thirteenth assignment of error, that the court erred in his conclusion of law in holding that appellant is now estopped from claiming the debt sued on from appellee: (1) Because appellant had looked to the estate of McKinstry for four years for the collection of his debt; (2) because appellant had permitted the appellee to believe that he was released from said debt; and (3) that appellant had placed ap-

pellee in such a position that he could not probably collect said debt or reimburse himself from the estate of J. T. McKinstry. Being of the opinion that appellant at the request of appellee, having pursued his claim first before the guardian and afterwards in the administration for four years, without succeeding in the collection of its debt, is not thereby estopped from resorting to this action against his surety, appellee, upon his contract to pay the note sued on. It appears from the evidence that appellee requested appellant to pursue the estate, and that he did not want to be sued himself and desired appellant to make the debt out of the principal's estate if possible, and that appellee kept informed as to the status of this claim before the probate court was cognizant of the progress being made, and as a matter of law he had the right, at any time he was dissatisfied with appellant's prosecution of the claim, to pay off the same and be subrogated to the rights of appellant in the further prosecution of said claim. The appellant owed no duty to appellee to collect said note, either from the guardian of the estate of J. T. McKinstry, insane, or from the administratrix of the estate of J. T. McKinstry, deceased, and did not in our opinion waive any rights it had against appellee by granting his request to file the claim with said guardian and with said administratrix, respectively, and we are unable to see how its action in this respect constitutes under the law such election of remedies as would now estop appellant from maintaining this action to recover against appellee upon the note in question.

[11] As to appellee's contention that he was misled in a conversation with appellant's attorney, by being informed by said attorney that the account or claim herein sued on had been approved by the probate court and that settlement would be made and that the money was in the Amarillo National Bank, understanding from said statement that he would be relieved from liability on said claim, it affirmatively appears from the evidence and without contradiction that, immediately after the administratrix refused to pay appellant's claim as approved by the court, the said attorney for appellant promptly notified appellee of the fact that the administratrix had refused to pay said claim, and that appellee was not misled to his prejudice by said statement. A surety is not discharged by the fact that the creditor tells him that arrangements had been made looking toward the payment of a debt, and the surety need trouble about it no more, and especially is this true where, after the arrangements failed, the creditor promptly notified the surety of that fact before the surety has altered his position to his injury. Appellee testified that appellant's attorney told him the claim had been approved by the court and that the administratrix had mon-

ey in the bank with which to pay same and that the surety need not bother himself about it any more. The evidence also shows that shortly after appellant's counsel made the above statement to appellee, and after it became apparent that the administratrix would not pay the claim, said counsel promptly notified appellee that the administratrix was refusing to pay the claim, and it does not appear from the evidence that appellee altered his position to his injury between the time that appellant's attorney told him he need not bother about it any more, and the time that such attorney advised him that the administratrix was refusing to pay the claim. Turk v. Richie, 104 Va. 587, 52 S. E. 339; Dreeben v. Bank, 93 S. W. 510; Driskell v. Mateer, 31 Mo. 325, 80 Am. Dec. 105; Auchampaugh v. Schmidt, 77 Iowa, 13, 41 N. W. 472; Mich. State Ins. Co. v. Soule, 51 Mich. 312, 16 N. W. 662.

As hereinabove indicated, we are of the opinion that the court erred in not rendering judgment for appellant herein for the principal, interest, and attorney's fees, according to the tenor of the note sued upon, and for all costs in this behalf expended, it appearing that the note sued upon was signed by appellee and was his original contract to pay according to the tenor thereof, and that at the death of J. T. McKinstry appellee became primarily liable on said note and was bound to pay the same; and no part of the said debt having been paid by said J. T. McKinstry, or realized from his estate, and there being no sufficient defense either pleaded or proven by appellee to appellant's cause of action against him, we therefore conclude that the judgment appealed from should be here reversed and rendered in favor of appellant for his debt, principal, interest, and attorney's fees, as prayed for in his petition, and for all costs of suit, and it is so ordered.