[Civ. No. 431.   Third Appellate District.—February 20, 1908.]

SELMA S. WIENER, Appellant, v. H. GRAFF & COM-
PANY (a Corporation), JEANTROUT-BOUDREAU
COMPANY (a Corporation) et al., Respondents.

LANDLORD AND TENANT—LEASE—OPTION FOR ADDITIONAL YEAR—NOTICE
TO LESSOR.—Where a lease provides for an additional year upon
the same terms, at the option of the lessee, provided notice in
writing of the exercise of such option be given within a time
limited, upon compliance with such condition, the lessee is entitled
to hold for the additional term, under the original lease, and not
·under the notice—the lease becoming one for both the original
and extended terms.

ID.—SUFFICIENCY OF NOTICE OF OPTION—DESCRIPTION OF PARTIES AND
OF LEASE—WANT OF SIGNATURE.—Where the notice of option for
the additional term was˝ dated and addressed to the lessor named,
and delivered to him, and required him to "take notice" that "the
firm named as 'lessee' in the lease, which is sufficiently referred to
and described, and its covenant for the option set forth, does
hereby elect to avail itself of and accept the privilege contained
in said lease for the period of one year," etc., it is sufficient to
accomplish its purpose, though the signature thereto is omitted
by the lessee, where no objection was raised thereto by the lessor
for the period of six months.

ID.—SUBSEQUENT INCORPORATION OF FIRM IMMATERIAL.—The subse-
quent incorporation of the firm by the same name and the transfer
of its business assets thereto is immaterial, where the lessor was
not thereby misled and did not act upon it.

APPEAL from a judgment of the Superior Court of.
Fresno County, and from an order denying a new trial. H.
Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, and F. E. Cook, for Appellant.

H. H. Welsh, Bernhard & Southerland, George Cosgrave,
M. F. McCormick, and Crichton & St. John, for Respond-
ents.

CHIPMAN, P. J.—This is an action to recover the possession of certain real property situated in the city of Fresno, alleged to be unlawfully withheld from plaintiff by defendants. Defendants claim possession under the provisions of a lease from the owner to H. Graff & Co., and by subleases by the latter.

It appears that the property in question was the subject of a lease between the owner, one J. J. Konigshofer, as lessor, and H. Graff & Company, a copartnership, lessees, dated December 1, 1899, for the term of five years, from its date, at the yearly rental of $1,500, payable monthly in advance, on the first day of each month, in equal monthly installments of $125. The lease contained the following provision: "And it is hereby further agreed, that the parties of the second part (lessees) shall have the privilege of one year's additional lease on the same terms and at the same rental as heretofore, provided that they signify their acceptance in writing to the party of the first part (lessor) on or before September first, Nineteen hundred four"; that the rental was paid at all times, as agreed in the lease, to W. T. Mattingly for the lessor, who appears to have been his agent to receive the rental, up to December 1, 1904, and was thereafter tendered, on the first of each month, to Mr. Mattingly but was refused, no reason for such refusal being given; that in June, 1904, H. Graff, a member of the firm of H. Graff & Company, forwarded in a letter by registered mail to Konigshofer at Alameda, California, enclosed in one of the firm's business envelopes "with the firm name and address in the corner," the following notice:

"Fresno, Cal., June 7, 1904.

"J. J. Konigshofer:

"Take notice that H. Graff & Co., the lessee named in that certain indenture of lease made by you as lessor, to H. Graff & Co., as lessee, on December 1st, 1899, which said lease is recorded in Volume H. of Leases, page 133 et seq., thereof, Fresno County Records, and whereby the said lessor did lease to the said lessee that certain real property situated in the County of Fresno, State of California, and described as follows, to wit:

"In the Wiener Block in the City of Fresno, County of Fresno, better described as the three stores nearest the alley

in said block, said Wiener Block being on Tulare Street between I and J Sts., Fresno, Cal.

"And which said lease contains the following covenant: 'It is hereby further agreed that the parties of the second part shall have the privilege of one year's additional lease on the same terms and at the same rental as heretofore, provided that they signify their acceptance in writing to the party of the first part on or before September 1st, 1904,' does hereby elect to avail itself and accept the privilege contained in said covenant just described, and requests the continuance of said lease under the same terms as are now contained in said lease for the period of one year from and after the first day of December, 1904.

"_____

"_____."

No explanation is given why this acceptance happened not to be signed.

It appears, further, that Mr. Graff "received back the registry card receipting for the letter," which was introduced in evidence "and is signed by Mr. Konigshofer receipting for the letter containing the notice forwarded by the witness and referred to in his testimony"; before sending the notice Graff gave it to Mattingly, who handed it back to Graff and told him he would have to furnish it to Mr. Konigshofer and gave him the latter's address at Alameda. It appeared that H. Graff & Company was incorporated in 1901 and made an assignment to the corporation of the following property: "The stock of merchandise, furniture and fixtures, horses and wagons, certificates of stock, warehouse, all bills receivable and all indebtedness due, together with the good will of that business heretofore conducted by us in the city of Fresno . . . and known as the merchandise business of H. Graff & Company. It being the intention . . . to sell and convey . . . all their right, title and interest and ownership in and to the said copartnership business of H. Graff & Company and in and to all personal property of every kind and character owned and possessed by said partnership on this date." Whether this assignment carried with it the lease in question or was so intended does not appear otherwise than from the above description of the property assigned.

The contention of appellant is that the notice given by the lessees failed to meet the requirements of the lease which required that in the event of seeking a renewal thereof they should "signify their acceptance in writing to the party of the first part on or before September first, 1904"; that something more than giving notice was required; "that the writing itself in and of itself signify and prove the acceptance of the lease and its extension for the additional term," which it failed to do because not signed by the lessees.

It is not disputed that if the notice or acceptance, which was in fact served upon the lessor in due time, had been signed by the lessees it would have effected its object and would have secured the additional term of one year. The sole question, therefore, would seem to be: Was the notice ineffectual to accomplish this object?

It seems to us that the phrase, "provided that they (the lessees) signify their acceptance in writing to the party of the first part (the lessor)," means simply that the lessees were to make known, manifest, notify, or express in writing their acceptance or desire to continue the lease, for these terms are synonymous with the term "signify" as used in the lease. It is doubtless true that it was intended not only that the lessees should so make known or signify in writing their acceptance as to secure the privilege of the additional term, but also that the lessor could hold them to its performance; the acceptance, in short, should be mutually enforceable.

It is also true, we think, that the contract was one for the renewal of the lease, and it was incumbent upon the lessees to give notice of the option within the time limited in the lease (*Shamp* v. *White,* 106 Cal. 220, [39 Pac. 527]) ; and this they did. We think, further, that upon compliance with the condition as to giving notice the lessees would then be entitled to hold for the additional term under the original lease and not under the notice—the lease would then become a lease for both the original and extended terms. (*Sheppard* v. *Rosekrans,* 109 Wis. 58, [83 Am. St. Rep. 886, 85 N. W. 199].)

Appellant cites several cases in support of her contention. *Klockenbaum* v. *Pierson,* 16 Cal. 375, was a case where the maker and indorser of a note were sued. On the day the

note matured the notary left a notice at the residence of the indorser—who ·was absent at the time—describing the note and stating that it was protested by him for nonpayment, and that the holder looked to the indorser for payment. The court said: "This notice was without any signature of any kind, nor did it indicate in any way from whom it proceeded. It was ineffectual, therefore, to charge the indorser." There was nothing in the body of the notice or attached to it in any way to show by whom the notice was given. In *Marston* v. *Bradshaw*, 18 Mich. 81, [100 Am. Dec. 152], it was held that the officer taking the acknowledgment of a deed must subscribe the certificate and that his name written in the body of the certificate is not sufficient. Held similarly, also, as to the transcript of a justice's judgment, where the same was not signed, in *Bigelow* v. *Booth*, 39 Mich. 624. So held in *Clark* v. *Wilson*, 127 Ill. 449, [11 Am. St. Rep. 143, 19 N. E. 860], as to the certificate of a notary, the reason in part being that the statute required the officer to subscribe his name to the certificate. The fourth Encyclopedia of Law (second edition), 200, is cited to the effect that to constitute the signing of a bill or note the drawer's or maker's name must be written with intent to authenticate and give effect to the contract thereon; but at page 109 of the same volume it is stated that, apart from statutory requirements, the name need not be subscribed, and it is sufficient if it appear in any part of the instrument; thus where it is declared that "I, J. S., promise to pay" is as good as "I promise to pay," signed "J. S." (Note 2.) The intent, then, is not alone shown by the instrument being subscribed by the party to be charged. (See *Auzerais* v. *Naglee*, 74 Cal. 60, 69, [15 Pac. 371]; *California Canneries Co.* v. *Scatena*, 117 Cal. 447, [49 Pac. 462].) See, also, 25 Encyclopedia of Law, page 1065, where it is stated that in neither ordinary nor legal language are the words "sign" or "signature" confined to the writing of the name at the bottom of the paper. We are cited to *Hoffman* v. *Anthony*, 6 R. I. 282, [75 Am. Dec. 701], to the point that where a notice of mortgagee's sale was not signed it was held invalid. It appeared that the notice did not state who made the mortgage or to whom it was made; nor who advertised the sale; nor who was to conduct the sale, and, finally, no means were pointed out by which any-

one could ascertain the terms of the power to sell or the conditions upon which it might be exercised. Very properly the notice was held to be insufficient. In *Thomas et al.* v. *Caldwell et al.,* 50 Ill. 138, the action was to recover for labor and material furnished in the erection of a church building under a written contract. One Short, with others, was sued upon this contract, and although his name appeared in the body of the contract he did not sign it, and it was held that he was not a party to the agreement and it was error to render a decree against him for the payment of the money. To like effect, it is claimed, is *D'Argy* v. *Godefry,* 1 Mart. [La.] (O. S.) 75, but we have not been able to find this case. Obviously these were instances involving the binding force of contracts which at no stage had been signed by the parties sought to be charged. *Clemmons* v. *Brownfield,* 19 Mo. 118, is cited, but we find no such case in that volume. *Spinney* v. *Downing,* 108 Cal. 666, [41 Pac. 797], was an action in which the defendant, by way of cross-complaint, relied upon a contract to furnish certain building material. The court said: "It appears without conflict that it was the understanding and agreement between plaintiff and Downing that the proposed contract should be reduced to writing, and signed by both parties. This fact is made very clear by the evidence. The paper as drawn up was signed by Downing, but for some reason which does not appear never was signed by the plaintiff, Spinney. It, therefore, never became a binding or subsisting obligation upon either." The reason for this was "that the proposed contract contained reciprocal stipulations and covenants upon the part of each as a consideration for the acts of the other." In that case the intention was that the contract should be signed by both parties, but here there is no intention expressed or necessarily implied that the lessees should subscribe the acceptance before it should be a binding obligation, nor was the signature of the lessor necessary. The notice was to be in writing and sufficiently authenticated, but we do not think that such authentication could be manifested only by signing the paper at its bottom. It was addressed to the lessor and directed him to take notice that the lessee (naming the firm) "does hereby elect to avail itself and accept the privilege contained in said covenant just described (the notice identified the lease

by stating its date and place of record and set forth the particular clause granting the option), and requests the continuance of said lease under the same terms as are now contained in said lease for the period of one year from and after the first day of December, 1904.'' On its face and in its body it appeared to have emanated from H. Graff & Co., the lessees, and the purpose of the notice is stated with clearness and precision. When it was delivered to and receipted for by the lessor he could not have doubted by whom it was sent nor the purpose intended in sending it. Notice, when required by statute, has been held not the equivalent of knowledge, but ''notice of itself,'' said the court in *Williams* v. *Bergen*, 108 Cal. 166, 171, [41 Pac. 287, 288], ''imports that the information given thereby comes from an authentic source, and is directed to someone who is to act or refrain from acting in consequence of the information contained in the notice.'' In *Michigan State Ins. Co.* v. *Soule*, 51 Mich. 312, [16 N. W. 662], the validity of a foreclosure sale was challenged on the ground, among others, that the notice of sale was not properly signed. The court held that as the statute did not require the party foreclosing to sign his name to the notice ''it was sufficient if the name appeared therein.'' (See, also, *Fitzpatrick* v. *Fitzpatrick*, 6 R. I. 64, [75 Am. Dec. 681].) It was held in *Evans et al.* v. *Barker et al.*, 101 N. Y. 289, [4 N. E. 516], that ''the omission to indorse upon papers served or filed the postoffice address or place of business of the attorney, as required by rule 2 of the Supreme Court, is a mere irregularity, and entitles the party served either to return the paper, or move to set it aside; but he cannot, after receiving it without objection, safely disregard the function which the paper is designed to perform.''

Respondent cites an English case quite in point. A lease contained a clause enabling the tenant ''to surrender and deliver up the premises'' at the end of every three years, he first giving the lessor ''six calendar months' previous notice of his intention so to surrender the said premises.'' The notice given was as follows: ''Notice to surrender. Sir. I hereby give you notice that I will surrender and deliver up to you, the quiet and peaceable possession of all that and those house and lands of Altavilla, which I hold from —————— as tenant. Dated the 22nd day of September, 1863. To John

Parker Carleton, Esq., and all whom it may concern.'' The
notice bore no signature. The action was for rent notwith-
standing the surrender of the possession by the tenant and
his placing a keeper in charge on the day noticed. ''O'Hagan,
J. There are two points in the case; first, was the notice
sufficient under the terms of the contract? and, secondly, was
everything done by the defendant necessary to determine his
tenancy after the service of notice? On both points I agree
with the majority of the court below. There is nothing about
names or signatures in the proviso, and the question substan-
tially is, whether, on the face of the notice, the parties, lands,
dates, and so forth, are sufficiently set forth to convey the
intention of the tenant to the landlord. The only question
is as to the person from whom the notice purports to come,
and though he is not specified by name, yet he calls himself
the tenant of the lands of Altavilla, and the expression 'sur-
render' also shows that he regards the relation of landlord
and tenant as subsisting between them. I think this con-
forms to the requirements of the deed. The parol evidence
merely showed what is necessary to show by parol in every
case of notice, *i. e.,* that the notice was served and understood.''
With him concurred four justices—one other dissenting. The
notice in the case at bar is stronger in its facts than the case
cited, for it clearly shows ''from whom the notice purports
to come.'' Nor can we see that a different rule would ap-
ply where the notice is intended to convey an intention to
hold over than where the intention is to surrender the prem-
ises. Appellant would distinguish the two cases on the
ground that in *Carleton* v. *Herbert,* 14 Week. Rep. 772, the
question was as to what amounts to sufficient ''written no-
tice,'' while here the question is what is a sufficient ''written
acceptance.'' The view we take of the matter admits no
such distinction. It is written *notice* of acceptance, i. e., no-
tice of the lessee's intention to renew the lease, with which we
are to deal as it was in the Carleton case written *notice* of
surrender; and after all is said, it comes to this—what, un-
der the circumstances, was sufficient ''written notice''? With
this notice in his possession, served in June, 1904, the lessor
expressed no objection and made known no dissent until No-
vember 9, 1904, when he served notice on all of the defend-
ants that the tenancy would expire on December 1st fol-

lowing, and requiring them to yield up possession. The lessees thereafter, regularly on the first of each month, tendered the rental, but it was refused and this action was commenced January 28, 1905.

Just what point plaintiff relies upon in showing the incorporation of H. Graff & Co., and the assignment of the firm's partnership business to the corporation, is not clear. It may have been to hold the corporation as subtenant with other defendants, and it is urged also in the argument to show that the notice was insufficient because the lessor could not determine from it whether it came from the partnership or from the corporation. The record states the fact of the incorporation, but does not state that plaintiff knew the fact or was in any way misled by it or acted upon it. We do not see that this feature of the case in any wise affects the principal question argued by appellant.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.