[S. F. No. 6374. In Bank.—March 21, 1913.]

J. R. HOWELL, Respondent, v. CITY OF HAMBURG COMPANY (a Corporation), Appellant.

LANDLORD AND TENANT—LEASE OF UNLAWFUL BUILDING TO BE CONSTRUCTED — ORDINANCE PROHIBITING CONSTRUCTION — UNLAWFUL CONSIDERATION—VOID LEASE.—A lease of a frame and corrugated iron building to be constructed on a lot situated within the so-called fire limits of the city and county of San Francisco, is invalid, if at the time of the execution of the lease, and at all subsequent times, ordinances of the municipality were in force making it unlawful to erect or construct, within such limits, such a building as was provided for in the lease and in fact constructed. Such contract is founded upon an unlawful consideration, in that the construction of the building provided for therein was contrary to an express provision of law, and is void and unenforceable in its entirety.

ID.—SAN FRANCISCO — FIRE LIMITS — PROHIBITION AGAINST WOODEN BUILDINGS—SUPERVISORS CANNOT LEGALIZE TEMPORARY WOODEN BUILDINGS.—Under section 5, chapter II, of the charter of the city and county of San Francisco, authorizing the board of supervisors to fix the limits within which wooden buildings or structures should

not be erected or maintained, and prohibiting the change of such limits when once established except by extension, the board had no authority, after the fire of April 18, 1906, even by ordinance, to permit the erection of any wooden building within the limits previously defined as the fire limits, and could not validate the erection of such buildings by an unofficial announcement permitting their temporary construction and maintenance.

ID.—RENEWAL OF LEASE—CONSTRUCTION OF COVENANT—EXTENSION OF ORIGINAL LEASE.—Where a covenant in a lease simply gives the lessee the option to retain the premises for a specified additional term, without the execution of any new lease, the covenant is merely one for an extension of the original lease, and where the lessee gives the notice of exercise of his option, if notice be required by the terms of his lease, he is entitled to hold for the additional term under the original lease, which then becomes a lease for both the original and extended terms.

ID.—PRIVILEGE GIVEN TO LESSEE TO RENEW—NOTICE OF EXERCISE OF PRIVILEGE.—Where the language of a lease merely gives the lessee the privilege to renew it for a further specified term, without any covenant by the lessor to renew it, the implication is that a notice subsequently provided to be given by the lessee of his intention to exercise the privilege was the only thing essential to give the right to the additional term.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Harding & Monroe, and Robert H. Borland, for Appellant.

Charles F. Hanlon, for Respondent.

ANGELLOTTI, J.—This is an action commenced April 4, 1910, to obtain judgment for three hundred and sixty dollars rent alleged to be due under the terms of a lease for the months of January, February, March, and April, 1910.    The case was submitted to the trial court for decision upon an agreed statement of facts.    Plaintiff had judgment as prayed and this is an appeal by defendant from such judgment.

The material facts are as follows: On May 17, 1906, plaintiff was the owner of a lot of land forty by sixty feet fronting on Oregon Street near Davis Street in San Francisco.    This lot was within the territory in which the erection of wooden

buildings or structures was then prohibited by ordinance enacted prior to April 18, 1906,—in other words, within what is generally styled "the fire limits," and has ever since been within said fire limits. On May 17, 1906, the parties to this action entered into a written agreement of lease, by which plaintiff let to defendant that certain one story frame and corrugated iron building "to be constructed" on said lot, "and to be erected as soon as possible," for the term of two years from June 1, 1906, to June 1, 1908, for eighty dollars per month, payable monthly in advance. The plaintiff expressly agreed therein "to use every effort to have said premises completed as near to June 1, 1906, as possible." The privilege was thereby given to defendant "to renew this lease for a period of three years from June 1, 1908," at eighty-five dollars monthly rental for the first year, ninety dollars for the second year, and ninety-five dollars for the third year, provided that notice of the intention to exercise the privilege be given the lessor in writing ninety days prior to June 1, 1908. In conformity with the terms of the lease, plaintiff constructed the building on the lot, and defendant took possession under the lease, and paid the stipulated rent for the first two years. On February 26, 1908, defendant gave plaintiff notice in writing of its intention to renew the lease for three years from June 1, 1908, at the rental specified in the so-called renewal clause. It continued in possession until the latter part of December, 1909, paying the stipulated rent to December 31, 1909. Prior to December 31, 1909, defendant tendered the keys and possession of the premises to plaintiff, but plaintiff refused to accept the same. Defendant vacated the building and has not been in the occupancy of the premises at any time since December 31, 1909. The premises were vacant to the time of the commencement of the action.

At the time of the execution of the lease, ordinances in force made it unlawful to erect or construct on said lot such a building as was provided for in said lease and in fact constructed. Among the things admitted by the stipulation of facts is that "the consideration for said lease was the erection upon said lot of land of the said wood frame and corrugated iron building." It is clear, of course, that such erection was at least a most material part of the consideration. At no time since

the execution of said lease has there been any ordinance in terms purporting to authorize the erection within said limits of such building as was agreed to be constructed on said lot and as was actually constructed thereon.

In the face of the great necessity for temporary buildings in San Francisco immediately following the conflagration of April 18, 19, and 20, 1906, the municipal authorities of the city and county unofficially announced that the construction of temporary wooden frame buildings within said fire limits would be permitted until July 1, 1906, but that all said buildings would be subject to removal at the pleasure of the authorities. On January 6, 1908, an ordinance was adopted providing for the removal not later than May 1, 1910, of all buildings erected ''in violation of and contrary to the laws and ordinances of said city and county of San Francisco,'' and directing notice thereof to be served on all owners. On April 11, 1910, an ordinance was adopted providing for said removal not later than May 1, 1911. Defendant occupied the building in question from June 1, 1906, to the latter part of December, 1909, and was never interfered with by the authorities of the city in the use and enjoyment thereof.

The charter of the city and county of San Francisco authorizes the board of supervisors to fix the limits within which wooden buildings or structures shall not be erected or maintained, and provides that ''such limits when once established shall not be changed except by extension.'' (Charter, chap. II, sec. 5.) So that it would seem that the supervisors would have had no authority after the fire, even by ordinance, to permit the erection of any wooden building within the limits previously defined as the fire limits, the charter provision limiting their powers in this behalf. But they did not even purport to so do by ordinance, which even if there were no charter provisions would be essential to any change in existing ordinances on the subject. All that there was in this case in effect was the unofficial announcement of the municipal authorities that they would regard the law on the subject suspended for the time being and would not attempt to enforce it, which was followed by the actual failure on the part of such authorities to enforce the same. The good faith both of the authorities and those erecting wooden buildings under the assurance thus given is not to be questioned in the slightest

degree. It may freely be conceded that the emergency was such as to morally justify the authorities and those acting upon their assurances in doing as they did. But of course the law could not be changed in any such way. The ordinances on the subject continued in force unaffected by the unofficial announcement in the slightest degree, with the result that the construction of this building on this lot, which was expressly provided for in the lease, was "contrary to an express provision of law," and therefore "not lawful" (Civ. Code, sec. 1667), on May 17, 1906, and at all times thenceforth. We regard this proposition as so elementary in its nature as to require no citation of authority to uphold it. Certainly no case cited by learned counsel for plaintiff tends to support a contrary law.

It necessarily follows that the contract of lease was founded upon an unlawful consideration, and that the entire contract was therefore void and unenforceable. (Civ. Code, secs. 1607, 1608; *Berka* v. *Woodward,* 125 Cal. 119, [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777]; *Swanger* v. *Mayberry,* 59 Cal. 91.)

It is claimed that even if the original lease was void and unenforceable for the reasons stated, plaintiff is not required to rely upon the same for a recovery in this case, reliance being placed upon the rule that the test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires the aid of the illegal transaction to establish his case. Admittedly if he does so require the aid of the unlawful transaction, he cannot enforce his claim. (*Berka* v. *Woodward,* 125 Cal. 119, [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777].) The theory of plaintiff in this connection is that the old lease terminated on June 1, 1908, and that defendant then entered upon a new three years' lease which involved no unlawful feature in that it cannot be held to have contained any undertaking for the *erection* of a forbidden structure, such structure having already been erected, and the stipulated facts not showing that the ordinances in force in terms prohibited the mere *maintenance* of such a building already constructed within the fire limits. For the purposes of this decision it may be assumed that a prohibition of the construction of such a building within the fire limits was not also a prohibition of the

maintenance of the same after its construction. Plaintiff's theory that defendant after June 1, 1908, was occupying the premises under a new lease, rather than under an extension of the old lease, is based on the fact that the privilege given by the old lease was one *"to renew* this lease for a period of three years,'' etc., and not a privilege to extend the old lease at all and that defendant in fact gave notice of his intention "to renew the lease'' for such period. The authorities fully support the claim of learned counsel for plaintiff that a covenant for renewal of a lease at the option of the lessee "imports the giving of a new lease'' (2 Wood's Landlord & Tenant, sec. 1413), "contemplates the execution of some further instrument by the lessor'' (*Delasham* v. *Berry,* 20 Mich. 297, 298, 4 Am. Rep. 392]), gives the lessee the right "to have another lease'' (*Hunter* v. *Silvers,* 15 Ill. 176), "requires the making of a new lease'' (Taylor's Landlord & Tenant, sec. 332), "involves the making of a new lease'' (Wood's Landlord & Tenant, sec. 413), "would require the making of a new lease'' (*Sheppard* v. *Rosenkrans,* 109 Wis. 58, [83 Am. St. Rep. 886, 85 N. W. 199]). On the other hand, if the lessee is simply given by the original lease the option to retain the premises for a specified additional term, without the execution of any new lease, the covenant is merely one for an extension of the original lease, and when the lessee gives the notice of exercise of his option, if notice be required by the terms of his lease, he is "entitled to hold for the additional term under the original lease,'' which then becomes a lease "for both the original and extended terms.'' (*Wiener* v. *Graff,* 7 Cal. App. 580, 583, [95 Pac. 167].) Although the word "renew'' is used in the eighth subdivision of the lease before us, we do not think that the giving of any new lease was within the contemplation of the parties. The *lessor* did not covenant to renew the lease, the language being that "the privilege is hereby given the *lessee to* renew this lease,'' etc., which implies that the notice subsequently provided to be given by the lessee of his intention to exercise the privilege was the only thing essential to give the right to the additional term. This was the practical construction given to the provision by the parties, for the defendant did not demand a new lease and the plaintiff did not give one. The notice of intention to exercise the privilege being given by defendant, it

CLXV Cal.—12

remained in possession, and the plaintiff, without giving any new lease, accepted rent from it in accordance with the provisions of the original lease as to the possible additional term prescribed for therein. And in his complaint in this action, plaintiff in terms alleges that "defendant has continued in possession . . . pursuant thereto (the original lease) *and to the extension thereof*," and the trial court found this allegation to be true. We therefore concur in what was said by the district court of appeal of the first district in this connection in deciding this case,—namely, that the so-called renewal of the lease was not the creation of a new lease after the building was constructed, but was merely an extension of the original lease, with the result that the important question in the case is the legality of the original lease-contract. The action is based solely on that contract, and plaintiff is required to rely upon that alone for a recovery. It certainly is clear that if the provision was one for a new lease rather than one for an extension of the original lease, plaintiff would be without any right of recovery for rent for any period of time after defendant had vacated the premises, for no new lease was given, and the original lease, on that theory, ended on June 1, 1908, with the result that defendant was under no obligation to continue as plaintiff's tenant. It is only on the theory that the original lease was extended that plaintiff could have any right of action at all. There is no force whatever in the suggestion that defendant's notice of intention to exercise its privilege can be regarded as a new lease.

We find nothing else in the briefs of counsel that requires discussion here. We are satisfied that the district court of appeal was correct in its conclusion that plaintiff has no right of recovery in view of the stipulated facts. In view of the circumstances appearing, the contract upon which recovery is sought was founded upon an unlawful consideration in that the construction of the building provided for therein was contrary to an express provision of the law. The agreement under the circumstances was one of a kind sometimes styled "a gentleman's agreement," one which the parties thereto are considered in honor bound to abide by, but which the courts cannot enforce, on account of considerations of public policy. And this is so, although, as in this case, the undertaking of the plaintiff was in no way *malum in se* or contrary to good

morals, except in so far as the mere violation of any law is contrary to good morals.

The district court of appeal clearly showed the distinction between its decision in this case and its decision in *Wayman Investment Co.* v. *Wessinger et al.,* 13 Cal. App. 108, [108 Pac. 1022]. It said in that regard: "Our conclusion in this case is not in conflict with the case of *Wayman Investment Co.* v. *Wessinger et al.,* 13 Cal. App. 108, [108 Pac. 1022]. There the contract of lease did not require the erection of a building in violation of an ordinance, but the lease was of a building which had already been constructed, and what was said by the court in that case was that 'the leasing and giving possession of a building originally illegally constructed, for an agreed rental' involved no violation of law; that 'the ordinance did not in terms prohibit the leasing of such a building.' Moreover in that case it appeared that the tenants were in possession, enjoying the use of the illegal structure, and apparently claimed the right to do so without the payment of any rent."

The judgment is reversed.

Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.