[S. F. No. 14758. In Bank.—July 29, 1933.]

TAY–HOLBROOK, INC., Appellant, v. E. R. TUTT et al., Respondents.

Walton C. Webb for Appellant.

Fitzgerald, Abbott & Beardsley and Chapman, Trefethen, Richards & Chapman for Respondents.

CURTIS, J.—Suit for declaratory relief brought by plaintiff to have determined whether or not a lease entered into by the plaintiff as a tenant and the defendants as landlords had been renewed. Plaintiff contends that there had been no legal renewal of the lease, while the defendants make a contrary contention. The lease was for a term of five years beginning on July 1, 1925, and provided for a monthly rental of $416.66. It contained a provision giving to the lessee ''the right, privilege and option to renew this lease for a further period of five (5) years from and after the expiration thereof, towit: from the first day of July, 1930, to the first day of July, 1935, upon the same terms and conditions as are embodied in this lease except that the rental for said premises during all of said renewed term shall be the sum of Five Hundred Dollars per month, payable monthly in advance, and it is agreed that if the Lessee determines to exercise this option he shall give written notice of his decision so to do to the lessor, or to his agent, sixty (60) days prior to the date upon which this lease expires by its terms, and in the event that the Lessee decides to exercise this option and gives to the Lessor notice of his decision so to do sixty (60) days before the expiration of this lease, then the Lessor agrees to execute and deliver to the Lessee a written lease of said premises for said extra term of five (5) years at said rental of Five Hundred Dollars per month, such lease to have incorporated therein the same terms and conditions as are contained herein, except as to the amount of rental, which rental shall be at the rate of Five Hundred Dollars per month during all of the renewed term.''

The lease covered a brick building fifty by one hundred feet in size situated at the northwest corner of Tenth and Harrison Streets in the city of Oakland. The plaintiff, the tenant, remained in possession of said premises for the full term of five years and paid all rent called for by the terms of said lease. He also continued in possession of said premises after the expiration of said five-year term. He gave no notice of his decision to exercise said option for a

renewal of said lease before the expiration of said original term of five years, or at any time thereafter. He did, however, pay to his landlords after the expiration of said five-year term the increased rental to be paid by him in case the lease was renewed, that is the sum of $500 per month each month from July 1, 1930, the date of the expiration of said original term of five years, to and including the first day of September, 1931. These monthly payments of rent the court found were made "on and in some instances within two or three days after the first day of each month commencing with July 1, 1930". They were made by checks drawn by plaintiff in favor of defendants and to each check was attached a voucher containing the following notation, "Rental of northwest corner of 10th and Harrison Streets, Oakland, Cal. for the month [here was inserted the month and year of the payment] as per lease." These checks together with the attached vouchers were received and accepted by the defendants. The vouchers were detached from the checks, after which the checks were indorsed by the defendants, deposited by them in the bank, and were then returned to the plaintiff through the regular banking channels. Another fact to which some importance is attached—especially by the plaintiff—is that plaintiff in addition to the premises above referred to and on April 1, 1929, leased a storeroom belonging to defendants and adjoining the first mentioned premises. The monthly rental called for in this second lease was $125 payable monthly on the first day of each month. Plaintiff's checks after the effective date of this second lease included the monthly rental under both leases, and each check given prior to July 1, 1930, was for the combined sum of $416.66 and $125, or $541.66, and each check drawn on July 1, 1930, and thereafter, to and including September 1, 1930, was for the sum of $625. The two properties together constituted the northwest corner of Tenth and Harrison Streets and, as stated before, the rental of these combined properties was paid by one check for the aggregate amount of the monthly rental thereof.

After the payment and acceptance of the rent due September 1, 1931, the plaintiff brought this action, which its attorney terms, "a friendly suit for declaratory relief between the tenant and landlord brought by the tenant to have it

determined whether or not a lease has been renewed or not''. A trial was had at which the two leases, the checks above referred to, together with said vouchers, were before the court. There was also oral testimony received, which was to the effect that plaintiff had never expressly notified defendants in writing, or otherwise, of its exercise of its option to renew said lease of July 1, 1925, and that no written renewal of said lease had ever been executed by the parties hereto. It was also shown by evidence that after September 1, 1931, plaintiff continued to pay the rental upon said two pieces of property by check in the same amount and in the same manner as before September 1, 1931, except that the notations on the vouchers attached to these later checks did not contain, as did the prior vouchers, the words, ''as per lease''. This course of dealing continued to some time in December, 1931, when the lease of April 1, 1929, expired because of the expiration of its term.

The trial court made findings and rendered judgment, and declared that said lease had by the acts of the parties been extended for a term of five years from July 1, 1930. The plaintiff prosecutes this appeal from said judgment.

The facts of the case are not in dispute. In the findings of the court, the facts as detailed above are fully and rather minutely set forth. In addition thereto, the court found as facts that the provisions in said lease requiring written notice of plaintiff's decision to exercise its option for a renewal of said lease, and for the making of a new lease for an additional term of five years, had been waived by the parties thereto and particularly by the defendants, for whose benefit said provisions were inserted in said lease.

█ Plaintiff insists that these findings of the court regarding waiver of these provisions of the lease are mere conclusions of law and have no place in the findings of fact. It is not always an easy matter to distinguish between findings of fact and conclusions of law. But in the instant case, we think the question presented is not of material importance. As stated above, the facts of this case are fully and rather minutely set forth in the findings. A perusal of the findings will show that practically all the material evidentiary facts in this case are to be found fully set forth therein. Under these circumstances, it is of no consequence that the conclusions of the court regarding the waiver of the

said provisions of the lease are made a part of the findings of fact rather than included in the conclusions of law. If we regard them as findings of fact, then their validity is to be determined by evidentiary facts found in other parts of the findings. If we regard them as conclusions of law, then they must stand or fall dependent entirely upon the facts as found by the court. In the instant case, the result would be the same whether we regard these matters as conclusions of law or as findings of fact. The one question to be determined is whether the provisions of the lease providing for a renewal have been waived by the parties to the lease.

The evidence shows that at the expiration of the original term of five years, the plaintiff remained in possession of the leased premises and paid the increased rental provided for by the terms of the lease. The defendants after the expiration of the lease permitted the plaintiff to remain in possession of the premises and accepted from it the increased rental which was to be paid only in case the lease was renewed. This course of business continued for a period of more than a year without either party questioning the rights of the other. Were we considering this case from the standpoint of the rights of the tenant, we would be disposed to hold that the landlords, by accepting the increased rental and by permitting the tenant to remain and enjoy the possession of the leased premises, had waived the formalities prescribed in the lease in order to effect its renewal. We can see no reason why the same rule should not govern when applied to the rights of the landlords. Whether these provisions of the lease providing for its renewal were for the benefit of the landlords or the tenant is, in our opinion, a matter of no great consequence. Neither party expressly conformed to them, but both parties conducted themselves as if these provisions had been literally complied with. That the plaintiff considered that it was operating under the terms of a lease of the corner property may be inferred by the notation which it made on the vouchers attached to its checks. This notation, as we have seen, reads as follows: "Rental of northwest corner of 10th and Harrison Sts., Oakland, Cal. for the month of . . . as per lease." This inference is not entirely overcome by the fact that it also had a second lease covering the adjoining premises. The rental under this second lease was only

$125 per month, while plaintiff's checks, after July 1, 1930, were each for the sum of $625. The notation on the voucher, "as per lease" could not have referred entirely to the second lease. As the amount of the checks to which the vouchers were attached covered the rental of both premises, we must conclude that the plaintiff in drawing these checks and vouchers had in mind both premises as being under lease by it from the defendants. This construction of the checks and vouchers is in harmony with the entire conduct of the plaintiff, and the defendants as well, at the expiration of the original term of said lease, and for fifteen months thereafter. It seems clear to us from the evidence in the case, as expressed in the findings, that the parties intended to and did renew the lease for this additional term of five years, and that by their acts and conduct they waived the formalities provided in said lease for its renewal.

The plaintiff contends that such a determination of the question herein involved is contrary to the doctrine announced in the cases of *Howell* v. *City of Hamburg Co.*, 165 Cal. 172 [131 Pac. 130], and *Robertson* v. *Drew*, 34 Cal. App. 143 [166 Pac. 838]. We do not find anything in either of these cases at variance with our conclusion announced above. In the case of *Howell* v. *City of Hamburg Co.* the question at issue was whether a certain lease between the parties had been extended or renewed. It was conceded that the original lease was void, as its provisions contravened the terms of an ordinance of the city of San Francisco. Nevertheless, the parties thereto had operated thereunder during its original term. After occupying the premises for some months after the expiration of said term and paying the increased rental provided in said lease in case the lease was renewed, the defendant surrendered possession of the premises and removed therefrom. Plaintiff, the landlord, thereafter sued the defendant, the tenant, for three months' rental accruing after defendant had vacated said premises, on the theory that the lease had been renewed by the conduct of the parties. This court held that the provision in the lease giving the tenant the right to occupy the premises for an additional term after the expiration of the original term was an option *to extend* the lease and not *to renew* the lease for this additional term, and as the original lease was void there could be no valid

extension of a void lease. Had the original lease been a valid lease, we apprehend that the court might have held that the parties by their acts and conduct had effected a valid extension thereof. In *Robertson* v. *Drew, supra,* the plaintiff leased the premises to the defendant for one year with the privilege to defendant of renewing the lease for a further term of from one to five years. On the expiration of the original term the tenant served written notice that he had elected to take the premises for a further term of two years. The landlord replied for the tenant to call "at the office and we will fix it up". The tenant did not call at the office of the landlord, and nothing further was done regarding the matter. The tenant remained in possession for a period of about six months, paying the rental, which under the renewal of the lease was to be the same as under the original lease. After the tenant vacated the premises they remained unoccupied during the balance of said two-year term. The landlord then brought action to recover the rental for something like eighteen months, being the time intervening between the vacation of said premises by the tenant and the expiration of said two-year term. A judgment in favor of the tenant was affirmed, the court (at page 145) holding that, "We think these circumstances negative the theory that the parties understood that the defendant was entitled upon mere notice or by remaining in possession to hold the premises for an additional period under the original lease." It will thus be seen that the court decided the question as to whether the lease had been renewed by what the court conceived to be the intention of the parties immediately following the expiration of the original lease. In the present case the trial court was of the opinion that the intention of the parties as expressed by their conduct after the expiration of the original term of the lease was to renew the lease upon the terms expressed therein. There is at least one important respect in which the present action differs from the case as presented in *Robertson* v. *Drew, supra,* and that is that the plaintiff herein, the tenant, paid the increased rental required under the renewal. Another material circumstance present in this action is that the tenant has continued in possession of the leased premises paying this increased rental, and was so in possession of the property at the trial of the action. These facts

differentiate this case from the case of *Robertson* v. *Drew, supra,* and justify, in our opinion, the conclusion, no doubt in the mind of the trial court, that the parties to the lease by their acts and conduct following the expiration of the original term intended to renew the lease for an additional term and that they waived the formal requirements provided in the lease for the renewal thereof.

The trial court went further and found that the plaintiff by sending its check for the increased rental on July 1, 1930, together with the vouchers attached, thereby gave written notice of its election to exercise its option for a renewal of said lease. Plaintiff contends that even if the check and voucher can be construed as written notice to the landlords of the tenant's intention to exercise said option, it was sent after the expiration of the original term and was, therefore, ineffective for any purpose, citing *Robertson* v. *Drew, supra,* and other authorities recited in the opinion in that case. We are not basing our opinion in this case entirely upon said checks and vouchers, but upon the entire course of conduct and the business dealings of the parties thereto, following the expiration of said original term. As stated before, we consider that the acts and conduct of said parties during said period of time were strong evidence that the parties to said lease intended to and did renew said lease for an additional term of five years.

The judgment is affirmed.

Thompson, J., Langdon, J., Preston, J., Seawell, J., and Waste, C. J., concurred.