RODRÍGUEZ FONT REALTY CORPORATION, Plaintiff and Appellee, v. J. GUS LALLANDE, INC., Defendant and Appellant.

No. 508.  Decided February 15, 1963.

*Brown, Newsom & Córdova* for appellant.  *Félix Ochoteco, Jr.,* for appellee.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

"The term of the present contract of lease is three (3) years, to begin retroactively on the first day of April of the current year [1956], and therefore, to expire on the thirty-first day of March, nineteen hundred and fifty-nine, said term to be extendible for three (3) additional years, at the sole option of the lessee, but the latter being bound, in order

to exercise the right of extension, to have faithfully complied with all the covenants of the present contract; and, in the second place, to notify the lessor by registered mail, at least four (4) months prior to the expiration of the original three-year term, that the lessee shall exercise the right of extension, it being stipulated, consequently, that the lack of said notice within the aforesaid term shall definitively deprive the lessee of its right to enjoy said extension." Such is the clause of the lease contract executed by the plaintiff-appellee Rodríguez Font Realty Corporation, as lessor, and the defendant-appellant J. Gus. Lallande, Inc., as lessee, the interpretation and application of which gave rise to the present suit for declaratory judgment, in which both parties timely moved for summary judgment.[1]

The first story and part of the second of a building situated in 1 General Gamba Street in the waterfront section of San Juan, were the premises object of the lease, which were devoted by the lessee to its business of storing, packing and distributing "Sello Rojo" rice of the Rice Growers Association of California, having installed the necessary machinery and equipment therefor. The stipulated monthly rental was $1175, payable in past-due monthly instalments during the term of the contract; but in the event that the lessee should exercise the right of extension agreed upon for three more years, said rental would be increased to $1,300 monthly.

The lessee used the leased premises until March 31, 1959, the expiration date of the term established for the contract, but remained in possession thereof after said date without notifying the lessor in any manner whatsoever and within

---

[1] Pursuant to Rule 59 of the Rules of Civil Procedure of 1958, 32 L.P.R.A., Supp. 1961, p. 173, the procedure to obtain a declaratory judgment is governed by said rules. See *Asoc. de Distribuidores* v. *Econ. Stab. Adm.*, 81 P.R.R. 206 (1959); *Colón* v. *San Patricio Corporation*, 81 P.R.R. 236 (1959); *Llopiz* v. *Arburúa*, 72 P.R.R. 496 (1951); *Cristy* v. *Malavé*, 70 P.R.R. 497 (1949), decided under the former Rule 57 of the Rules of Civil Procedure of 1943, similar in its language to the present Rule 59.

the term provided by the parties of its intention to exercise the exclusive option of extension in its favor stipulated in the contract—by registered mail, at least four months prior to the expiration of the three-year term. However, at the end of the month of April 1959, the lessee sent the lessor a check for the sum of $1,175, stating in the voucher attached to the check that it was for "Rental of General Gamba Warehouse," but, according to the testimony of the President of the lessee-appellant which was attached to the motion of opposition to the summary judgment (Tr. Rec. p. 55), the lessor "immediately returned it insisting that the rental was $1,300; and the defendant corporation, consenting to the request of the plaintiff corporation, returned the aforesaid check of $1,175 plus another check for $125, and subsequently continued paying a monthly rental of $1,300." In the voucher attached to the check for $125 the reference appeared as "Balance of rental for General Gamba warehouse." [2] It was not until October 16, 1959 that the lessee—confirming a conversation held two days previously—notified the lessor in writing its intention to vacate the premises on the last day of February 1960.[3] Appellant vacated the premises on March 30, 1960.

---

[2] On page 4 of its brief the appellant explains that it consented to said insistence "because it did not wish the lessor to notify the termination of the lease from month to month." Although plausible, this explanation finds no support in any of the testimonies or counter-testimonies attached to the motions for summary judgment, and, therefore, we can not consider it as an established fact for the purpose of deciding the present petition. See, however, the subsequent discussion on pages 338 and 339 as to the effect of § 12 of the Reasonable Rents Act.

[3] The text of the letter reads thus:

"I am referring to the conversation that I had with you in connection with the premises that we occupy at present at General Gamba Street, and we wish to inform you that we shall vacate the same on the last day of February 1960, on which date we shall move to our own mills.

"If in the meantime there should arise any difficulty that will compel us to remain one month more in said warehouse, we shall proceed to notify you immediately."

A slight discrepancy arises as to whether the lessor had previous knowledge of the lessee's intention to move the industrial and commercial operation of its business to the mills that were being constructed by its principal near the town of Cataño. However, we may assure that there is no conflict as to the fact that the Rice Growers Association of California began to take steps in January 1958 to establish a mill and warehouse in Puerto Rico to process hulled rice brought in bulk from California, store and pack it; that on October 16 following it obtained tax exemption under the Puerto Rico Industrial Incentive Act of 1954 (Act No. 6 of December 15, 1953, 13 L.P.R.A. § 241 *et seq.*); that on December of that same year it made arrangements with the Industrial Development Company for the acquisition of an industrial area in the waterfront of Guaynabo-Cataño; and during the first months of 1959 it commenced the construction of the mill and other facilities; and that these facts were amply published in the local press. Furthermore, the plaintiff corporation "although it had knowledge through its president that the defendant or a third corporation was constructing a mill to be used by the defendant in its rice operations, it was only informed by the defendant verbally about October 14, 1959 and in writing on October 16, 1959, that the lessee intended to vacate the aforesaid premises and surrender the same to the plaintiff, being at all times... under the impression that the defendant would either use the premises as their warehouse in San Juan or that they would lease them until the end of said contracts..." [4] These are all the facts that are necessary to decide the controversy between the parties as to the duration of the leasehold relations between them.

The position of the lessor corporation is that the lease was extended without need of the notice that the lessee was

---

[4] By virtue of clause 8(n) of the lease contract the lessee was forbidden to assign in whole or in part its right to lease or to sublease said premises, except to any branch organization of said lessee, or if the assignee or sublessee were Mr. J. Gus Lallande, his children or heirs.

bound to make upon withholding possession of the leased premises after the expiration of the original term and upon paying the higher rental stipulated in the event of extension; the lessee alleges that at the expiration of the term established between the parties there arose a month to month contract by implied renewal upon the lessee remaining in possession of the thing leased for 15 days with the acquiescence of the lessor and in the absence of the requirement provided by § 1456 of the Civil Code, 1930 ed., 31 L.P.R.A. § 4063.[5] In a well-reasoned opinion the trial court upheld the position assumed by the lessor.

---

[5] "If, on the expiration of the contract, the lessee continues enjoying the thing leased for fifteen days with the acquiescence of the lessor, it shall be understood that there is an implied new lease for the time mentioned in sections 1467 and 1471 unless a notice has previously been given."

It has been indicated that since the renewal is never an extension of the existing contract, but rather a new lease, although based on the original one, implied renewal may be defined as "a contract of lease of a property which the law supposes to have been agreed on the basis of a pre-existing lease which is considered as renewed, by the inactivity of the lessor who failed to require the lessee prior to the expiration of the contract term, without, on the other hand, notifying the latter of its objection to said continuity during certain time, expressly substantiated by the lawmaker" (MORENO MOCHOLI, La "Tácita Reconducción" en la Nueva Ordenación de los Arrendamientos de Fincas Rústicas, 178 Rev. Gral. de Legis. y Jurisp. 581 (1945)). It is justified by the benefit which represents the continuity of the exploitation of farming lands and as an additional guarantee of the lessee's stability. DE CASSO and CERVERA, in their Diccionario de Derecho Privado 3757 (1954), point out the concurrence of the following requirements for the existence of implied renewal: 1) that the parties be contractually related; 2) that the original lease be terminated, see Torres v. Biaggi, 72 P.R.R. 813 (1951); 3) that the lessee continue in the enjoyment of the leased premises for 15 days; 4) that this enjoyment be with the consent of the lessor, cf. Besosa v. District Court, 68 P.R.R. 29 (1948); Rodríguez v. Bosch Brothers, 32 P.R.R. 554 (1923); Toro v. Pizá Brothers, Ltd., 30 P.R.R. 70 (1922); Puig v. Soto, 18 P.R.R. 130 (1912); and 5) that there should not exist any covenant which expressly or impliedly opposes the implied renewal or that the latter should not be stipulated in the contract. In general, see León Parra v. Gerardino, 58 P.R.R. 494 (1941).

As to the term for implied renewal see Judgments of the Supreme Court of Spain of September 29, 1896 (80 Jurisprudencia Civil 228); October 12, 1900 (90 Jurisprudencia Civil 441); and November 20, 1909 (116 Jurisprudencia Civil 418).

Duly analyzing the covenant which we shall name "option for extension," it may be observed that it contains a clause for the benefit of the lessee which warrants its continuing occupying the leased premises for an additional period of three years without any notice from the lessor preventing it from said enjoyment, whether either the provisions of § 1456 in relation to § 1471 of the Civil Code, 1930 ed., 31 L.P.R.A. §§ 4063 and 4092,[6] relative to the requirement to prevent the continuation of the tenancy relation by implied renewal are applied, or the provisions of § 12 of the Reasonable Rents Act, Act No. 464 of April 25, 1946, 17 L.P.R.A. § 192,[7] concerning the compulsory extension of the lease on the expiration day agreed upon, the extension being subject to the exceptions of § 12-A of said Act, 17 L.P.R.A. § 193. Under any of the aforesaid provisions the lessor waived recovery of the property for the term of three years. However, the clause referring to the notice that the lessee was bound to give, as to its intention to exercise the option to extend, benefits the lessor "in contemplation of the future disposition of the premises" as properly pointed out by the trial court. *Cf.* Judgment of the Supreme Court of Spain, *Sala de lo Social*, of September 18, 1941 (VIII ARANZADI, *Repertorio de Jurisprudencia* 617).

---

[6] "Should a term not have been fixed for the lease, it is understood for years, when an annual rent has been fixed, for months, when the rent is monthly, and for days, when it is daily.

"In every case the lease ceases without the necessity of a special notice upon the expiration of the term."

[7] "Regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee, without altering any of the clauses thereof, all of which shall be deemed in force. The foregoing is applicable both to written and oral contracts and the extension shall be understood for the terms fixed by section 1471 of the Civil Code, but never for a period longer than the duration of the emergency declared in this Act. Said extension is also applicable to leased lots whereon buildings belonging to an owner other than the owner of the lot are erected."

It is inferred that if the requirement of the written notice to be given by the lessee sufficiently in advance of its intention to extend the lease term by exercising the option for extension agreed upon in the original contract is for the benefit of the lessor, the latter may waive its performance. *Dickinson* v. *Robinson*, 272 Fed. 77 (C.C.A. 4, 1921); *Wolf* v. *Tastee Freeze Corp.*, 109 N.W.2d 733 (Neb. 1961); *Achtar* v. *Posner*, 56 A.2d 797 (Md. 1948); *Wallworth* v. *Johnson*, 55 A.2d 305 (N.J. 1947); *Straus* v. *Robbin*, 133 Atl. 868 (N.J. 1926); *McClelland* v. *Rush*, 24 Atl. 354 (Pa. 1892); *Wood* v. *Edison Electric Illuminating Co.*, 69 N.E. 364 (Mass. 1904); *Fuchs* v. *Peterson*, 146 N.E. 556 (Ill. 1925); *Stone* v. *St. Louis Stamping Co.*, 29 N.E. 623 (Mass. 1892); *McCue* v. *Collins*, 208 S.W.2d 652 (Texas 1948); *Burke* v. *Shafer*, 189 S.W.2d 444 (Texas 1945); *Kaimann* v. *Spivak*, 17 S.W.2d 599 (Mo. 1929); *Khourie Bros.* v. *Jonakin*, 300 S.W. 612 (Ky. 1927); *Dockery* v. *Thorne*, 135 S.W. 593 (Texas 1911); *Flint* v. *Mincoff*, 353 P.2d 340 (Mont. 1960); *Ketcham* v. *Oil Field Supply Co.*, 226 Pac. 93 (Okla. 1923); RASCH, Landlord and Tenant and Summary Proceedings, § 211 (Baker, Voorhis & Co., 1950). *Cf.* Judgment of the Supreme Court of Spain of January 2, 1891 (69 *Jurisprudencia Civil* 5). In other words, the failure of the lessee to give notice within the time and in the manner provided may serve as a shield to the lessor to deny the existence of the contractual relation, *Wolf* v. *Tastee Freeze Corp.*, 109 N.W.2d 733 (Neb. 1961); *Zeidman* v. *Davis*, 342 S.W.2d 555 (Texas 1961); *McClellan* v. *Ashley*, 104 S.E.2d 55 (Va. 1958); Annotations, *Effect of lessee's failure or delay in giving notice within specified time, of intention to renew lease*, 44 A.L.R.2d 1359 (1955), and *Landlord's consent to extension or renewal of lease as shown by acceptance of rent from tenant holding over*, 45 A.L.R.2d 827 (1956); but it may not be used as a spear against him by the lessee in order to elude his responsibility when the latter's conduct shows that his remaining in possession of the leased

thing grew out of the exercise of his right of option.[8]  He can not benefit from his own silence.

         The conduct of the lessee-appellant shows, in our opinion, that although it did not send the notice in writing required by the contract by registered mail and four months prior to the expiration of the original contract, it accepted that its withholding possession of the property was based on the exercise of the option to extend.  Its conduct in sending the balance of the increased rent, upon being demanded to do so by the lessor, can not be construed in any other way.  It constitutes an acceptance of the contractual provisions.  See *Amezaga* v. *Agudo*, 67 P.R.R. 6 (1947), and *Abarca* v. *Cordero*, 60 P.R.R. 507 (1942).  If it had not assumed that position, it would have been easy for the lessee to insist that since its possession was based on the implied renewal it was only bound to pay the rental stipulated for the original term of the contract.  As we previously noted, by virtue of the provisions of public policy restricting the action of unlawful detainer contained in § 12 of the Reasonable Rents Act, *supra*, on the expiration day agreed upon in the lease, the tenancy relationship is "compulsorily extended by the lessor at the option of the tenant or lessee, *without altering any of the clauses thereof*, all of which shall be deemed in force," except in the case where the lessor, after being duly notified, is authorized to "refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings," pursuant to the provisions of § 12-A of the aforesaid Act.[9]

*Tay-Holbrook* v. *Tutt*, 24 P.2d 463 (Cal. 1933), cited in the opinion of the trial court, presented a situation very

---

[8] For other theories related to the sufficiency of notice of the exercise of an option for extension of lease, see, Annotations, *Sufficiency of notice of exercise of option to renew lease*, 51 A.L.R.2d 1404 (1957), 148 A.L.R. 172 (1944), 99 A.L.R. 1010 (1935), and 1 A.L.R. 343 (1919).

[9] Contrary to the situation at present in Spain, there is a perfect harmony between the provisions of the Reasonable Rents Act which provide for the compulsory renewal of the lease and the sections of the Civil Code referring to the implied renewal, for § 12 *in fine, supra,* provides that

similar to the one in the case at bar. The parties entered into a lease of a premise for five years upon payment of a monthly rental of $416.66. It gave the lessee an option to extend the lease for five additional years under the same terms and conditions, except that the rent would be increased to $500 monthly. To exercise the right of extension it was provided that the lessee would give written notice to the lessor 60 days prior to the date upon which the lease expired. After the original term expired, the lessee continued in possession of the leased premises although it did not send the aforesaid prior notice. However, it paid the rentals at the increased rate and in the vouchers attached to the checks sent to the lessor it stated that it was for the rental of the premises. After stating that by their acts the parties had waived the clause requiring notice, and particularly the lessor for whose benefit the clause had been inserted in the contract, it was held that the conduct on the part of the parties showed their intention to extend the lease by exercising the option for extension, waiving the formalities provided in the contract. The appellant repeatedly insists that the situation before our

---

the new lease is extended for the terms provided in § 1471 of the Civil Code, 31 L.P.R.A. § 4092, although never for a period greater than the duration of the emergency in connection with the housing problem.

But for a few exceptions, the provisions in Spain on implied renewal have been rendered invalid because they are substituted by special legislative provisions for rural and urban leases. As to rural leases see §§ 2 and 3 of the Act of June 28, 1940 (2 MEDINA Y MARAÑÓN, *Leyes Civiles de España* 1105, *Instituto Editorial Reus* (1958), and § 6 of Act of July 23, 1942 (MEDINA Y MARAÑÓN, *op. cit.* at 1135); and as to urban leases, see § 57 of the Act of April 13, 1956 (MEDINA Y MARAÑÓN, *op. cit.* at 1362), and the former § 70 of the Urban Lease Act of 1946, from which our first sentence of § 12 of our Reasonable Rents Act was literally copied (II GARCÍA ROYO, *Tratado de Arrendamientos Urbanos* 9–29, *Gráficas Voluntas* (Madrid, 1948)). It was also expressly declared by the *Sala de lo Social* of the Supreme Court of Spain in its Judgments of March 26, 1953 (42 *Jurisprudencia Civil* 397); October 31, 1952 (XIX ARANZADI, *Repertorio de Jurisprudencia* 1598; February 7, 1946 (XIII ARANZADI, *op. cit.* at 233); November 19, 1945 (XII ARANZADI, *op. cit.* at 901); and June 23, 1942 (IX ARANZADI, *op. cit.* at 493); BELLÓN GÓMEZ, *Régimen Legal de los Arrendamientos Urbanos* 210, *Editora Nacional* (Madrid, 1949).

consideration is different, for the lessor never consented to the extension. It is true that there is no express showing of this fact, but precisely for that reason we have felt it necessary to examine its conduct in order to determine its true scope. If there is any element of distinction between both situations, the same is favorable to the lessor, for while in the *Tutt* case the increased rent was paid voluntarily by the lessee from the very first moment, here it was made at the express requirement of the lessor who demanded payment invoking the contract clause providing for the alleged exercise of the option of extension.

In *Cicinelli* v. *Iwasaki*, 338 P.2d 1005, 1011 (Cal. 1959), the assignee of a lease contract and the lessor agreed to extend a lease for five years with an increase in the monthly rental from $740 to $1,040, and it was held that the sending of a check for the latter sum gave rise to the inference that the lessee intended to exercise the option to extend and accepted to pay the larger sum, thus distinguishing it from *Colyear* v. *Tobriner*, 62 P.2d 741 (Cal. 1936), where although the lessee notified his intention to continue in possession of the property after the expiration of the term agreed upon, he did not indicate his willingness to the increased rent, but continued to pay the original rental.

*Cf. Moiger* v. *Johnson*, 180 F.2d 777 (C.A. D.C. 1950); *United States* v. *T. W. Corder, Inc.*, 208 F.2d 411 (C.A. 9, 1953); *Donnelly Advertising Corp. of Md.* v. *Flaccomio*, 140 A.2d 165 (Md. 1958); *Worthington* v. *Serkes*, 111 A.2d 877 (D.C. 1955).

*Le Blanc* v. *Barielle*, 25 So.2d 638 (La. 1946), on which appellant relies is neither favorable nor applicable to it. This is a case where a lease was executed for the term of one year with an option in favor of the lessee to extend it for three additional years under the same terms and conditions contained in the original contract—including the amount of rent—provided the lessee constructed additional facilities to

a minimum cost of $1,500 in the leased property. The improvements were constructed within the original term of the contract, but the lessee at no time gave notice, either orally or in writing, to the lessor that he intended to remain in possession thereof, although he continued to occupy the property after the term agreed upon had expired and paying the stipulated rental. When the lessor filed an action to recover possession the lessee alleged for the first time that the acceptance of the rent after the expiration of the original term coupled with the fact of the performance of the condition as to the improvement constituted an express or implied renewal of the contract for the whole period stipulated in the event of an extension. The court held that in the absence of an action of the lessee positively stating his intention to make use of the new lease, the fact of remaining in possession after the expiration date agreed upon merely constituted a tacit reconduction, but did not bind the lessor for the whole extended term. It should be noted that this case is nothing more than an application of the theory that the requirement of notice to exercise the option is for the benefit of the lessor and that the lessee can not impose on the lessor the continuation of the tenancy relation if he has not complied with the terms provided for said notice. A similar situation occurred in *Wieck* v. *Glindmeyer*, 16 S.W.2d 487 (Ky. 1929), also cited by the appellant, which did not deal with the conduct of the lessee in connection with a contract requiring the payment of an increased rental for the exercise of an option to extend.

The trial court did not commit error in rendering judgment declaring that the tenancy relationship between the parties existed until March 31, 1962 and that the lessee was bound to the payment of the lease rental up to the latter date. However, at first blush, the leased premises devoted to a commercial and industrial enterprise are subject to the regulation governing housing, § 4(a) of Act No. 464 of April 25, 1946 (17 L.P.R.A. § 184(a)). This being so, we can

not, in the absence of evidence on the point, determine the amount that should be paid by the lessee, particularly considering the possibility that the rental increase agreed upon by the parties is affected by said regulation.   To this respect, see *United States Trust Co.* v. *Nedab Holding Corp.*, 93 N.Y.S.2d 276 (1949), and *Plessdore Realty Corporation* v. *Fasano*, 69 N.Y.S.2d 435 (1947).

The judgment rendered by the Superior Court, San Juan Part, on April 21, 1961, will be affirmed.